1810.

### Lessee of Cox *against* CROMWELL.

The owner of a prior warrant and survey upon which the purchase money is paid, is not barred either in law or equity from recovering in ejectment, notwithstanding there has been a decision against him by the board of property in consequence of his neglecting to attend the hearing upon a caveat, and he has lain by *fifteen* years after that, during which the party in whose favour the caveat was decided, has paid his purchase money, obtained a patent, and made improvements on the land. Although the owner of such warrant and survey may relinquish the land, yet when the purchase money is paid, these circumstances are not sufficient evidence of relinquishment. The omitting to take actual possession of the land, is no evidence of it, nor can the delay to bring an ejectment be a bar, if it be for a length of time less than that prescribed by the act of limitations.

THIS was an appeal from the decision of *Brackenridge* J. at a Circuit Court for *Huntingdon* in *June* 1808.

It was an ejectment for a tract of land on *Aughwick Creek*, in the county of *Huntingdon*, which the plaintiff claimed under a warrant of the 31st *May* 1762 for 200 acres to *George Alway*, and another of the same date to *Nathaniel Parker* for the same quantity, upon both of which the purchase money in part was paid to the receiver of the proprietaries on the 16th *June* 1762, a survey made upon the land in question on the 8th *June* 1765, and a return into office on the 23d *August* following. On the 19th *June* and 26th *July* 1762, *Parker* and *Alway* respectively conveyed to the plaintiff.

The defendant's title commenced with a deed from *George Croghan*, the proprietaries' agent for Indian affairs, dated the 14th *May* 1754, to *Casper Devebach* and others, who in 1755 and 1767 assigned to *John Switzer*. This deed recited a grant to *Croghan* by the *Six Nations of Indians*, of a tract situated on *Aughwick*, and conveyed 1000 acres of it for a valuable consideration to the grantees. On the 15th *Dec.* 1766, *Switzer* entered in the land office two applications for 200 acres each, covering the premises in the ejectment, upon which surveys were made on the 24th *June* 1784. He had previously, on the 5th *May* 1767, filed a caveat against any survey or surveys made for *William Trent*, or any other person claiming under him, or who held in trust for him, or whose names he made use of to cover lands for him on a piece of about 1000 acres called *Clark's* bottom, and below on *Aughwick* &c. alleging that he, *Switzer*, claimed the land in question by deed from *Croghan* prior to any person. This caveat was heard before the board of property on the 2d *May* 1785, a day which had been fixed with the consent of *Cox*, who was a party to the proceedings, but failed to appear; and upon this hearing, the board decided in *Switzer's*

favour, stating that it appeared to them that *Switzer* claimed under an application of the 15th of *December* 1766, that he also claimed the same by purchase from *George Croghan* in the year 1754, that he had made improvements, paid taxes, and been in possession of the land many years. Three days after this decision *Switzer* paid the purchase money, and on the 7th of *May* 1785, obtained patents for both his surveys. The ejectment was brought to *January* term 1800, up to which time *Switzer* had remained in possession.

His honour Judge *Brackenridge* charged the jury, that there was no evidence of any title to *George Croghan* from the *Six Nations*, the recital in his deed to *Devebach* and others not being evidence of that fact; and if *Croghan* had received a deed from the *Six Nations*, or any other nation of *Indians*, it would have been void, as it would have been in violation of law. That deed therefore and all operation of it were to be laid out of the case. The defendant's title must rest upon his application and possession, and upon the abandonment of the plaintiff. Considering the war, and the impediments in the way of judicial proceedings, he did not think the right of the plaintiff could be considered as abandoned at the time of the decision of the board of property; but it was a lying by, which he could not avoid coupling with the lapse of time after the decision, to raise an equitable consideration in favour of the defendant. The decision of the board, his honour said, was not final; nor did the law declare that it should be of no consideration. It was not however the weight of this decision upon which he laid stress, it was the plaintiff's declining to prosecute the claim before the board, suffering the defendant to pay his money, and lying by fifteen years after, while the defendant or those who held under him were improving the land. These circumstances established an equity for the defendant, which ought to protect him. The legislature in instituting the board, spoke of imperfect titles, which must refer to the title short of a patent. His honour considered the title short of the patent, as something short of a legal title, strictly speaking, and as coming under the doctrine of agreements to convey. Here were before the board of property, before the vendors the com-

1810.

Lessee of
Cox
*v.*
CROMWELL.

monwealth who succeeded to the proprietaries, two equitable purchasers. The question was, who should have the legal title. The one declines appearing; the patent of confirmation is given to the other. The other equitable claimant lies by fifteen years. The person to whom the patent is given, goes on to improve. He has paid a large sum of money for his patent; shall he in this country lose the land? Principles of natural equity, moral reason, and public convenience, were against it. His honour therefore gave it as his opinion to the jury, that their verdict should be for the defendant.

The jury accordingly found for the defendant; and the judge refusing to grant a motion for a new trial, which was made upon the ground of misdirection in point of law, the plaintiff appealed to this court.

*Duncan* for the plaintiff contended that this charge was erroneous in point of law, inasmuch as a warrant and survey, with the payment of the purchase money, were not like the common case of an executory contract in *England.* If they were, a patentee selling to a purchaser without notice, would convey a good title, against an adverse warrant and survey. A warrant and survey are equal to a legal title in *Pennsylvania*, against all but the commonwealth, who have a lien for the purchase money. They are a legal title even against the commonwealth, if the purchase money is paid. They give the party a complete right to a patent. They are therefore not to be compared to a mere equity, which may be postponed to another equity according to the circumstances of hardship or negligence which may exist in the particular case; but they are to be governed by the rules which apply to all legal estates, and therefore no length of possession will prevail against them, except what will amount to a bar under the statute of limitations. The very circumstances however, which were said to create an equity in behalf of the defendant, shew that he has none. The proof that the plaintiff declined appearing before the board of property, is proof also that the defendant had *actual* notice of the plaintiff's title, in addition to the constructive notice by the return of survey. He also must be presumed to have known, that the decree of the board of property did not settle the

question of right; and under such a state of things, his paying the purchase money, immediately afterwards, and his making improvements, if any were made, which was not in evidence, were acts of rashness which never can raise an equity.

*S. Riddle* and *J. Riddle* for the defendant said, that as a new trial depended upon the discretion of the court, and was never granted where justice was done, or where it would be very hard upon the winning party to defeat him, according to the *Dutchess of Mazarine's Case* (a), *Smith* v. *Brampston* (b), *Reavely* v. *Mainwaring* (c), *Sampson* v. *Appleyard* (d), and many other cases, the court would not in the present instance support the appeal, even if there had been some error in the direction to the jury; for it was most obviously a hard case, a case in which the merits had been tried, and in which, if the plaintiff could make out any title, it must be upon strict principles of law. But in fact there was no misdirection. The most that can be said of a warrant and survey is that it is a *quasi* legal estate. It is so as to the form of remedy, because we have no court of equity; but it is an equitable estate as between the owner and the commonwealth, until confirmation by patent, and is so also in an indirect way as to all persons who contend adversely for the patent. The application to the state for a patent, is in effect an application for a specific performance of the contract contained in the warrant. The board of property is to order this specific performance, to one or the other claimant according to his title. No doubt their decision is not conclusive; but if there is any trifling, any concealment, any unfair play, the party guilty of it loses his right to a performance. *Hays* v. *Carroll.* (e) The other party is of course preferred to him. Now, when *Cox* had fixed upon the day for a hearing, it was unfair in him to decline attending. He should have shewn his title, to put *Switzer* on his guard. It was in truth a fraud to permit this man to pay his money, upon the belief that the contest was given up, and to encourage his continued improvement of the place, through the space of fifteen years, while he was lying by. A court of equity will go a great way

1810.

Lessee of
Cox
*v.*
Cromwell.

(a) 2 *Salk.* 646.  (c) 2 *Burr.* 1306.  (e) 1 *Bro. P. Ca.* 27.
(b) 2 *Salk.* 644.  (d) 3 *Wils.* 272.

to relieve a party from the expense and injury to which by loss of witnesses and the like, such *laches* may expose him. It precludes the negligent party from the full benefit of the act of limitations. 1 *Fonbl. book* iv. *ch.* 27. *p.* 319.

The defendant's counsel also argued against the new trial upon the ground of merits.

TILGHMAN C. J. This is an appeal from the Circuit Court of *Huntingdon* county. The verdict was for the defendant in conformity to the charge of the judge before whom the cause was tried; and the plaintiff complains of an error in law in the charge.

To understand the matter, it will be necessary to give a sketch of the evidence. [The Chief Justice then stated the case at large.]

The judge of the Circuit Court was of opinion that *Croghan's* deed was of no validity, because it was not proved that he had any right to the land. He therefore gave it in charge to the jury, that the defendant's title must rest on his possession and the applications entered by him, and on the abandonment by the plaintiff of his claim to the land. He thought, that taking into consideration the war, and consequent obstruction of judicial proceedings, the plaintiff could not be said to have abandoned, prior to the decision of the board of property; although the length of time, during which the defendant or those under whom he claimed had been suffered to remain in possession before that decision, strengthened the equity of the defendant's case. But what appeared to the judge to be of very great consequence, was, the plaintiff's declining to prosecute his claim before the board, and suffering the defendant to pay his money, and lying by fifteen years after, while the defendant was improving the land. Under these circumstances, as neither plaintiff nor defendant had a perfect legal title at the time of the decision by the board of property, and as the plaintiff has not yet obtained a patent, he was of opinion, that the equity of the case was against the plaintiff, and the defendant ought to be protected in his possession. The judge added, that the principle on which he decided, was new, and had never within his knowledge been recognised by any judicial de-

cision, and it would therefore be agreeable to him that it should be brought before this court.

. In the argument before us, it has been contended on the part of the defendant, that at all events there ought not to be a new trial, because, independent of the point on which the judge charged in his favour, a sufficient title was made out under *Croghan.* It is true, that if this court were satisfied from the whole evidence, that the plaintiff ought not to recover, they would not order a new trial, although there might have been error in the judge's charge. It would be improper to give a new trial, when the result must be the same as in that which has past. But I see nothing to satisfy me, that there was a good title under *Croghan.* The judge was of opinion that his title was good for nothing. If he had a title, it certainly was not proved on the trial. I therefore throw that part of the case out of the question. The principle on which the judge gave his opinion in favour of the defendant is of very considerable importance. Property to a vast amount, in this state, is held under warrant and survey, where the purchase money has been paid, and under application and survey where it has not been paid. I shall confine myself to the case before us, which is a warrant and survey with the purchase money paid. There was a time when such estates were considered as personal property. But for many years past, they have been regarded as real estate, and there has been no question but the plaintiff might recover on them in an ejectment. In the case of *Sims's Lessee* v. *Irwin,* the Supreme Court of the *United States* decided, that an estate of this kind, was in all respects the same as a complete legal estate. I cannot say, that there is a perfect legal estate without a patent. The commonwealth have a right to insist on the patent being taken out, and may recover in an ejectment if it is not done. But an estate of this kind is certainly stronger than that of a man, who has contracted for the purchase of land from a private person, and paid his money, but obtained no conveyance. In that case if the vendor sells to a third person who has no notice of the first contract, he shall hold the land against the first purchaser. But a survey *returned,* is legal notice, and will prevail against a subsequent patent granted to a third person,

whether he had actual notice or not. The commonwealth cannot withhold a patent from the owner of a survey on which the purchase money has been paid, unless he has relinquished his title. Such relinquishment must be clearly proved, for it is in its nature an extraordinary act. Where no money has been paid, there may be many reasons which may induce a man to relinquish his purchase. But why should one give up land that he has paid for? The omitting to take actual possession of the land, is no evidence of relinquishment, because many persons take up land, with a view of letting it lie unimproved for many years. But there is said to be something more in the present case; the plaintiff has deceived the defendant by not appearing before the board of property, and by not bringing suit for fifteen years. If the plaintiff has committed actual fraud against the defendant, he ought not to recover. I will consider that matter presently. But the delaying to bring an action against a person, who was informed of the claim before he paid his money or made his improvement, cannot be a bar, if the delay was for a length of time less than that prescribed by the act of limitations. To say that it would, is to set up a limitation in contradiction to the law. If the plaintiff has been guilty of fraud, it is quite a different thing, and gives room for a defence on different principles. Let us see then what proof there is of fraud. The plaintiff did not appear before the board of property. There was no fraud in that. He staid away at his peril, and the consequence was a decree against him. This decree he knew, and the defendant ought to have known, was not conclusive. But the defendant thought proper to rely on it, and paid his money into the office *three days* after. The defendant probably went on to make improvements, although there is no evidence of any thing of consequence being done by him. But this was his own folly; because he had full notice of the plaintiff's claim, as appears by the caveat and proceedings before the board. I can perceive no evidence of actual fraud, nor any other ground for presuming fraud, than what arises from the delay in bringing an action. This appears to me to be negligence rather than fraud. But it is a negligence which the law permits, if not protracted beyond a certain period. The case then is reduced to this: The plaintiff had

a title which was not barred by the act of limitations; he had been guilty of no actual fraud, and the defendant paid his purchase money and made his improvements with notice of the plaintiff's claim.

Under these circumstances, I think the plaintiff ought not to have been barred of his recovery. I am therefore of opinion that a new trial should be granted.

YEATES J. I have read with much care the opinion which has been delivered by the Chief Justice, and now express my concurrence therein. I will only add thereto, that should the verdict in this case be sanctioned by the court, we must in effect declare, that a man forfeits his title, however good, by not appearing before the board of property upon a caveat, though the adverse party is acquainted with his right: or that a time short of the period prescribed by the limitation act, shall operate as a flat bar to the plaintiff's recovery; to neither of which propositions can I possibly accede.

New trial awarded.