The opinion of the Court was delivered by
Duncan J.
The plaintiffs offered in evidence certain depositions, taken under a rule of Court to take depositions ; ex parte rule, on 10 days notice ; these depositions were rejected, and a bill of exceptions taken.
The witness who proved the notice to take depositions, testified that he gave one of the defendants a copy of the no *250 tice, and produced the original; there were more than ten days between the date of the notice and the day appointed' to take depositions ; and the depositions were taken at the time and place appointed. No one attended on the part of the defendants.
It is now alleged, that the proof of service was defective, as it does not appear in the bill that the witness did state when served. If it appeared, that the objection was founded on this defect, the depositions were properly overruled ; but had it been made, the witness was present and could have stated the day of service ; he was not interrogated as to this; he was asked the question, did you serve a copy of this notice ? It would be laying a trap for the party to object to the depositions on other grounds, and then start in this Court, an objection which, had it been made, could have been easily removed by the witness. In fact, it is not pretended that this objection was made; and from another part of the record, there is demonstration that this was not the cause of rejection, for other depositions were admitted, though objected to, where the proof of service of notice was by the same witness, and nearly in the same words. Nothing appearing to the contrary, no other time than the date of the notice, to get rid of an objection of this nature under these circumstances. I would presume the day of service was the day of the date of the notice. The objection below, as is conceded, was, that in the rule it is not set forth, that the depositions were • to be taken before any judge or justice. No rule of Court requiring this to be inserted in the record is produced, and the rule as entered here is co-eval with the judicial records of the state, and universal in all her Courts ; the depositions must be taken before some judge or justice having authority to administer an oath. This is explained by the rule itself j indeed this seems to be given up by t|ie counsel for the defendants in error, or at least languidly defended, or is only supported on some alleged decisions which are admitted to be peculiar to this district. These depositions ought to have been received in evidence, as' taken under a rule of Court giving authority to any judge or justice of the peace to take them. ■ ■»
As mere ex pdrte affidavits, the witnesses living in the State when taken, and living in the State at the time of *251 trial, although they went to prove pedigree, they were not admissible. The relaxation of the general rules of evidence in cases of pedigree, refers to the nature of the evidence. Reputation, hearsay, entries by parents in family bibles 5 monumental inscriptions ; necessity justifies the admission of these; but the proof of this reputation, entries, inscriptions, by other than legal evidence is not required by any necessity. The ex parte affidavit proved to have been made is stronger evidence, than what one man heard from another; but where the witness is living, and within the process of the Court, the matter to be proved by him, must be proved as all facts are. It is not necessary now to decide, whether ex parte affidavits, taken beyond sea, or in any of the United States, could be received as evidence of pedigree, the witnesses living. In some cases, such affidavits taken in England, have been received ; and in Douglass's lessee v. Sanderson, ex parte affidavits taken in Delazvare, going further than mere reputation of pedigree, were admitted. But the opinion of the Court on certain questions of law, on which they are requested by the plaintiff in error to instruct the jury, is likewise excepted to. It will be proper, in order to understand the nature of the objections, to give a brief outline of the evidence. Both plaintiffs and defendants claimed under the original title, which was a location to John Jacob Gemberling, of 30th August, 1767; a survey of 29th September, 1768, and a survey returned on 25th January, 1770. The plaintiffs claim under a deed front John Jacob Gemberling to Michael Keller, dated 24th October, 1772, not recorded, and deduce title from Michael Keller. The defendants claim under a judgment of Jacob Gemberling against John Jacob Gemberling, of 25th March, 17.94; a sale on execution, and a deed from the sheriff of 26th August, 1796, to Jacob Gemberling. They examined one Philip Nutz, who testified, that his father made some clearing on the' land during the war of the revolution. John Jacob Gemberling two or three years after that war, worked on the land, and boarded with the witness’s father, when he lived on an adjoining tract; that his father bought from John Jacob Gemberling 50 acres for 50 pounds, and paid 20 pounds and no more ; the writing is lost. John Jacob Gemberling went away and never returned. His father gave it up to Jacob Gemberling, who paid back the 20 pounds. No further cul *252 tivation of the land, until Michael Keller, who claims under Jacob Gemberling, gave a lease to the witness, 16 or 17 years ago. Until that time there was no building on it.
The material question, (for it seems that question and answer is the mode adopted in this district,) is the second; that it was not incumbent on the plaintiff, or any person under whom they claim, to record the deed of 1772, from Gemberling to Michael Keller. The answer of the Court, that keeping the deed of 24th October, 1772, secret for more than 40 years, and John Jacob Gemberling taking possession of the land, and enjoying it as his own, long after the deed, and contracting debts, and suffering the land to be sold for the payment, it was necessary the deed should have been recorded, although its date is previous to the recording act of 1715; or that some other notice of that deed, or the claim of the plaintiffs, should have been given; otherwise the recovery of the plaintiffs will be barred in equity, if the jury believed the defendants were bona fide purchasers for a valuable consideration, and without notice of the plaintiffs’ claim.
This is just the effect of an unrecorded deed, executed since the act of 1715 ; for there notice is equal to recording. The only deeds, before that act, required to be recorded, were mortgages, or defeasible deeds in the nature of mortgages. These if not recorded within six months were void against subsequent purchasers ; but no law previous to that act of assembly required, under the penalty of forfeiting the estate conveyed, the registry of an absolute deed. The evidence of ownership of personal property is possession; the evidence of the ownership of lands, is the title. He who buys personal estate and suffers another to continue in possession is, in contemplation of law, so far as respects creditors of the vendor, or subsequent purchasers from him, guilty of a fraud. It is not only a badge of fraud; evidence of fraud to be left to a jury; but, agreeably to the modern decisions, is a fraud itself. Not so of lands, for there the purchaser must look to the title. An inchoate right, location or warrant, without survey in a reasonable time, is considered as abandoned; but the doctrine of abandonment never can apply where the survey is returned. Before that the contract is executory, and may be abandoned; after survey, it is executed. But abandonment is out of the question *253 b-jíre, where both parties claim under the same right. Abandonment or relinquishment can never be presumed, where money has been paid ; for it is, in its nature, an extraordinary act. Where no money has been paid, there may be many reasons which may induce a man, to relinquish his purchase; but why should one give up land that he has paid for ? The omitting to take actual possession of land, is no evidence of relinquishment; because many persons take up land with a view of letting it lie unimproved for many years. Such is the reasoning of the-Court- in. Cox's lessee v. ■Cromwell, 3 Binn. 120. So, many purchase land without a view to immediate settlement or sale ; they purchase, because experience has informed them of the gradual rise in the value of land. Limitation is a matter of legislative and not judicial power. The plaintiffs here then, have not lost the lands on account of an adverse possession of 21 years; at least if they have, it was not a question made on the trial. They have not lost them, because they have not registered a conveyance, which the laws of the land required should be registered, and declared the conveyance void against a subsequent purchaser. The delay of bringing an action, or omitting to take possession, is not evidence of actual fraud, nor a ground for presuming fraud. There were fields cleared on the land, but no actual resident settlement on it, until about IT years before the trial. There may be evidence of negligence, but.it is a negligence which the law permits, if not protracted beyond a certain period. The plaintiffs had a title not barred by the act of limitations. They have been guilty of no actual fraud. Had , notice of the possession been brought home to them, had they knowledge of the sale by the sheriff, of the subsequent sale, of valuable improvements, and looked on without giving any notice, this might postpone them ; but the not registering the deed, the not giving notice, the delay of ejectment only, whilst it stands not affected by the limitation law, is neither a bar in law or equity. Knowledge of the possession, of the sheriff’s sale, of the subsequent sale, of the improvements for IT years, would make out a strong . defence ; but this formed no part of the case on the evidence, nor in the opinion of the Court. The judgment must therefore be reversed, and a venire facias He novo awarded.
As this cause is returned for trial, it is proper to state, that the Court laid down the law correctly in the answer to the *254 plaintiffs’ first question. The recorded deed from Jacob Keller to George Stakes and others, and the recitals therein, were not notice to the purchaser at the sheriff’s sale, por how was the purchaser to find by inquiry at the recorder’s office this deed ? He would inquire for any conveyances from j0/m jacoi) Gemberling. He was not bound to search the record further. If conveyances from one stranger to another, would be notice to all the world, miserable would be the situation of the purchaser. The registering act would afford him no protection, because it could give him no notice.
Judgment reversed, and a venire facias de novo awarded.