# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1825, AT LENOX.

PRESENT:

Hon. ISAAC PARKER, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

---

## ALEXANDER M'MECHAN *versus* MARTIN GRIFFING.

Implied notice of a prior unregistered deed, to avoid a subsequent deed or attachment, must be not merely a probable, but a necessary and unquestionable, inference from the facts proved.

Such inference cannot in all cases be made from an open, peaceable, and exclusive possession. Thus, where a person owning and in possession of part of a lot of land not divided by any partition fence, purchased the residue, consisting principally of woodland and which had not been occupied by the grantor, repaired the fence round the lot, depastured cattle in it, sold trees from the part purchased, and removed an old hovel standing on the same part, it was *held,* that these facts did not imply notice.

Whether if the evidence of possession be such as to raise a legal presumption of notice, such presumption may not be rebutted by other evidence, *quære.*

ENTRY *sur disseisin.* Trial upon the general issue.

The demandant derived his title under an attachment of the land, on the 6th of May, 1822, as the estate of one Timothy Griffing, and a subsequent levy.

The tenant, to defeat this title, relied upon a title in himself previously acquired from the same Timothy Griffing. He proved that on the 20th of September, 1820, his father died seised of the premises demanded, together with other real estate, leaving five children, of whom Timothy was one ; that on the 9th of May, 1821, the children made an amicable division of the estate which had descended to them, executing to each other deeds of quitclaim, and that upon this division the Tracy lot, so called, fell to the shares of Timothy and the tenant in severalty, divided by a line, the north part being assigned to Timothy, and the south to the tenant ; and that on the same day Timothy conveyed to him by deed, for a valuable consideration, the north part of the Tracy lot, which includes the demanded premises. This deed was not recorded until the 2d of July, 1822, but the tenant alleged, that immediately upon the execution of it he entered upon the land thereby conveyed, and that from that time to the time of the attachment he had continued in open, peaceable, and exclusive possession.

On this point *H. W. Bishop* testified, that on the 9th of May the heirs before mentioned met together for the purpose of dividing the inheritance ; that some of the neighbours assisted them in making the division ; that after this was agreed upon the tenant bargained with Timothy for the land which was assigned to his share, and that Timothy at the same time gave a deed of it to the tenant ; that these transactions took place in the presence of a great many people and were the subject of their conversation. *Henry Griffing*, a brother of the tenant, testified that he lived with the tenant in May, 1821, and ever since ; that immediately after the tenant had bought the land of Timothy he was sent by the former to mend the fence about the lot ; that he drove the tenant's cattle to pasture on the lot through the whole summer of 1821 ; that the tenant took some sheep of Harvey Griffing to pasture ; that to his knowledge no other person than the tenant had or claimed to have any occupation of the lot or any part of it ; that in the course of the summer the tenant sold some chestnut timber for posts to one Williams, the most of which was cut from that part of the lot which Timothy conveyed to the tenant, and

was cut by direction of the tenant; that there was an old hove, which covered a saw for sawing wood on that part of the lot, which was taken down and removed by order of the tenant; and that the tenant got all his winter's wood from the lot, and principally from the part conveyed by Timothy. *A. Rosseter* testified, that in the summer of 1821 he bought of the tenant, upon a contract made with Henry Griffing, five trees, three of which stood on that part of the land which had been conveyed by Timothy, and that he cut and carried off the trees and paid the tenant for them; that he lived in the neighborhood and did not know of the occupation of the whole lot by any other person than the tenant after May, 1821. *E. Williams* testified that he applied to the tenant for the chestnut timber before mentioned, because he knew that he owned the lot. *J. Chittenden* testified, that to his knowledge the tenant had improved the land ever since the deed was made, and no one else; and that his possession was as open and notorious as that of any man in the neighbourhood.

The demandant produced evidence, which it is unnecessary to detail, to show that when he attached the land he had not in fact notice of the prior conveyance, and that the land was situated remote from observation.

It was agreed that the land conveyed was not divided by any fence from the residue of the lot which had been assigned as the share of the tenant, and that by far the greater portion of the pasture land was on this latter part, the former being principally woodland; that after the conveyance Timothy returned to the State of New York, where he had previously resided, and that he never claimed the possession, or any profits of the land, from the date of his conveyance.

The only question at the trial was, whether there was implied notice to the demandant of the unregistered deed; as to which *Lincoln* J. instructed the jury that the burden of proof was on the tenant; that if they were satisfied that the tenant entered immediately upon the demanded premises under the deed, and continued his possession thereof openly, peaceably, exclusively, and in the only manner in which the premises could be possessed and improved by the rightful owner, from the time of the execution of the deed to the time of the

demandant's attachment, it was in law notice equivalent to the registry of the deed, and they might find the issue for the tenant ; but if they were not so satisfied, they might find for the demandant.

M'Mechan
*v.*
Griffing.

No objection was made to this instruction, but a verdict being returned in favor of the tenant, the demandant moved for a new trial, and the judge consented to report the case for the consideration of the whole Court, upon such objections as might be made to the trial.

*E. H. Mills* and *Dewey*, in support of the motion, contended that the instruction to the jury was incorrect, for that open, peaceable, and exclusive possession was not in all cases notice equivalent to a registry of the deed, and was not so in the present instance.   They said that the words of the statute were general, that no unrecorded conveyance of land shall be effectual against any other person than the grantor and his heirs, but that the Court had made some exceptions, on the ground of fraud, where a subsequent purchaser or attaching creditor had notice of the first deed, and they distinguished this case from those in which such exceptions had been made ; contending, that if any thing less than actual notice would avoid the demandant's attachment, which had never been expressly decided, though there were *dicta* to that effect, yet notice could not be implied from the facts proved in this case.   They referred to *Priest v. Rice*, 1 Pick. 164 ; *Doe v. Routledge*, Cowp. 712 ; *Wyatt v. Barwell*, 19 Ves. jun. 456 ; *Doe v. Allsop*, 5 Barn. & Ald. 142 ; Sugd. Vend. 511 ; and the cases hereafter cited in the opinion of the Court.

*Sept. 21st,*
1824.

*Jarvis, contrà,* relied on 3 Mass. R. 573 ; *Prescott* v *Heard*, 10 Mass. R. 60 ; and *Davis v. Blunt*, 6 Mass. R 487.

WILDE J. delivered the opinion of the Court.   By the provincial statute of 9 *Will.* 3, *c.* 7, it is provided that no bargain, sale, mortgage, or other conveyance of houses or lands, made and executed within this province, shall be good and effectual in law to hold such houses or lands against any person or persons, but the grantor or grantors, and their heirs only, unless the deed or deeds thereof be acknowledged and recorded.

*Sept. 22nd,*
1825.

153

A provision nearly similar is contained in *St.* 1783, *c.* 37, directing the mode of transferring real estates by deed, and for preventing fraud therein.

It is said that it was formerly held by some, that under the provincial statute the estate did not pass until the registry of the deed, but it was at an early period determined, and has long since been settled as undisputed law, that the estate, as between the parties, passed immediately on the delivery of the deed ; and that when recorded, the deed was rendered valid from the beginning, by relation back, to all intents and purposes, unless the grantor, in the mean time, should have conveyed the estate to a subsequent *bonâ fide* purchaser, or it should have been attached or otherwise encumbered as his property. It was also determined, and it is equally well settled as the sound construction of the statute, that as the registry was designed only to give notice, and thereby to prevent purchasers being imposed upon by prior conveyances, any notice of the first conveyance, to a subsequent purchaser, before his purchase, is equivalent to the registry of the deed. *Trowbridge's Reading on the Statute*, 3 Mass. R. 573. If the subsequent purchaser thus affected with notice should nevertheless complete his purchase, intending to get his deed recorded before the first purchaser, and thereby to hold the estate, it would be a manifest fraud upon the first purchaser, and therefore void as to him. " Valid transactions, as between the parties," says Lord *Mansfield*, " may be fraudulent by reason of covin, collusion, or confederacy to injure a third person : for instance, A buys an estate from B and forgets to register his purchase deeds ; if C, with express or implied notice of this, buys the estate for a full price, and gets his deeds registered, this is fraudulent, because he assists B to injure A." *Worseley* v. *De Mattos*, 1 Burr. 474. C's deed, in the case supposed, being fraudulent, cannot be set up against A, who afterwards gets his deed recorded, without supposing, what can never be supposed, that the statute was intended to sanction fraud. In the case of *Le Neve* v. *Le Neve*, Lord *Hardwicke* says, " that the taking of a legal estate after notice of a prior right, makes a person a *malâ fide* purchaser. This is a species of fraud, and *dolus malus* itself ; for he knew that the first

purchaser had the clear right of the estate, and after knowing that, he takes away the right of another person by getting the legal estate. And this exactly agrees with the definition of the civil law of *dolus malus*. Dig. *lib.* 4, *tit.* 3, *lex*, 2. Fraud, or *mala fides*, therefore, is the true ground on which the court is governed in cases of notice." 3 Atk. 654.

On this ground numerous cases have been decided, both in this country and in England ; and the principle is too well supported by authority, and too clear, to admit a reasonable doubt. *Jackson* v. *Sharp*, 9 Johns. R. 168 ; *Farnsworth* v. *Childs*, 4 Mass. R. 637 ; *Norcross* v. *Widgery*, 2 Mass. R. 506 ; *Davis* v. *Blunt*, 6 Mass. R. 489 ; *Prescott* v. *Heard*, 10 Mass. R. 60 ; *Jackson* v. *Burgott*, 10 Johns. R. 457 ; *Dey* v. *Dunham*, 2 Johns. Ch. R. 190.[1]

To determine what notice is sufficient to supply the place of a prior registry, is more difficult. The notice, say tne authorities, must be either express or implied. As to express notice, it has been uniformly held, that the proof must be clear and unequivocal. " Suspicion of notice, though a strong suspicion," says Lord *Hardwicke*, in the case of *Hine* v. *Dodd*, 2 Atk. 275, " is not sufficient to justify the court in breaking in upon an act of parliament." In that case, which depended upon the Registry Act, (7 *Anne, c.* 20,) there was proof that the defendant acknowledged notice of the plaintiff's judgment prior to the execution of the mortgage set up by the defendant, but as he in his answer swore to his belief that he had not

---

[1] See also *Beers* v. *Hawley*, 2 Connect. R. 467; *Beers* v. *Broome*, 4 Connect. R. 248; *French* v. *Gray*, 2 Connect. R. 92; *Guerrant* v. *Anderson*, 4 Randolph, 208; *Root* v. *Holliday*, 6 Munf. 251 ; *Newman* v. *Chapman*, 2 Randolph, 73; *Levins* v. *Will*, 1 Dallas, 435; *Burke* v. *Allen*, 3 Yeates, 360; *Heister* v. *Fortner*, 2 Binn. 40; *Henry* v. *Morgan*, 2 Binn. 497; *Keller* v *Nutz*, 5 Serg. & Rawle, 246; *Semple* v. *Burd*, 7 Serg. & Rawle, 286; *Mus•* v. *Letterman*, 13 Serg. & Rawle, 167; *Dunham* v. *Day*, 15 Johns. R. 555, *Beekman* v. *Frost*, 18 Johns. R. 544; *Ex parte Stagg*, 1 Nott & M'Cord, 405; *Taylor* v. *Herriott*, 4 Desaus. 227; *Cowan* v. *Green*, 2 Hawks, 354; *Davidson* v. *Beard*, 2 Hawks, 520; *Cushing* v. *Hurd*, 4 Pick. 253; *Warden* v. *Adams*, 15 Mass. R. 233; *Trull* v. *Bigelow*, 16 Mass. R. 406; *Newhall* v. *Burt*, 7 Pick. 157 ; *Hurd* v. *Cushing*, 7 Pick. 169; *Lambert* v. *Nanny*, 2 Munf. 196; *Hoover* v. *Donally*, 3 Hen. & Munf. 316.

But see *Robinson* v. *Allsop*, 5 Barn. & Ald. 142; *M'Neil* v. *Cohill*, 2 Bligh, 228

notice, the proof was held to be insufficient. So in the case of *Jackson* v. *Given et al.* 8 Johns. R. 107, it was proved that Williams, under whom the defendants claimed, had said, in a conversation with a third person, about the time of the purchase, that " he had understood that Umphrey [his grantor] had fooled away the lot, and had sold it several times, and did not consider it worth his trouble to look about it." And it was decided that this conversation was too loose to justify the inference of notice. Chief Justice *Kent* cites with approbation the decision of Lord *Hardwicke* in the case of *Hine* v. *Dodd* ; and the same is much approved of likewise in the case of *Jolland* v. *Stainbridge*, 3 Ves. jun. 478. In the case of *Norcross* v. *Widgery*, Chief Justice *Parsons* says, that " when a prior conveyance, not recorded until after one of a subsequent date, is attempted to be supported on the ground of fraud in the second purchaser, the fraud must be very clearly proved." 2 Mass. R. 509. This remark applies as well to implied as to express notice. The principle is the same in both. The fact of notice must be proved by indubitable evidence ; either by direct evidence of the fact, or by proving other facts, from which it may be clearly inferred. It is not in such case sufficient that the inference is probable, it must be necessary and unquestionable. The general rule in respect to implied notice is correctly laid down by Justice *Trowbridge*, though like all general rules, it admits, I apprehend, of some exceptions. " If," says he, " one seised in fee of land, for a valuable consideration, by deed bargains and sells the land to another in fee, the deed gives the bargainee a right to enter, and when he enters by force of that right, he then is possessed of the land, and complete tenant in fee ; and such entry, being followed by *a visible improvement of the land, and taking the profits thereof,* is such an evidence of an alteration of the property, as will amount to implied notice thereof." 3 Mass. R. 575. Such a possession without the deed would amount to a disseisin, and nothing short of this can amount to implied notice. It is obvious that this is the opinion of Justice *Trowbridge*, and he certainly extends the doctrine of implied notice to its utmost legal limits.

He admits that the statute will have effect, " not only

where the bargainee, without recording his deed, suffers the M'Mechan
bargainor to remain in possession; but also where land lying v.
waste is sold, and the purchaser neither records his deed, *nor* Griffing
*enters and makes a visible improvement.* 3 Mass. R. 581.

But it is not always true that a possession, which if adverse
would constitute a disseisin, would, under a deed not recorded,
amount to implied notice. The cases depend on different
principles. By a maxim of the common law for the avoid-
ance of maintenance and stirring up of suits, no right of entry
or reëntry can be granted or assigned to a third person. And
if a disseisee makes a grant of the land, it is immaterial whether
the grantee has notice of the disseisin or not. But when
a grantee or bargainee records his deed, and a prior deed,
not registered, is set up to defeat his title, notice of such
prior deed is not only material, but is indispensable to give
it validity. The first deed is void by the statute, as to
the subsequent purchaser, and the possession under it does
not amount to a disseisin, because the possession is not ad
verse nor tortious. If therefore the subsequent purchaser is
not affected by notice, he has priority by virtue of the re-
gistering of his deed, and the express provision of the statute.

I admit that generally the open and notorious possession of
the first purchaser under his deed would be sufficient to raise
a legal presumption of notice.[1] But suppose that a lessor
should grant the fee of the land to the lessee, he being in pos-
session under the lease, and the next day should make a second
grant to a third person who well knew that the lessee the day
before was in possession under the lease, how does his con-
tinued possession furnish evidence of notice of his purchase?
To imply notice in such case, is to presume a fact, without
proof, and against probability.

But the present case does not require us to consider this
or any other exception to the general rule; for we are of
opinion that nothing appears by the evidence which will war-
rant the application of the rule itself. There is no evidence
to show that the tenant, at the time of the attachment, or at
any time previous, had the open visible possession and im-

---

[1] *Colby* v. *Kenniston,* 4 N. Hamp. R. 262.

provement of the premises. If there had been no deed from Timothy, the possession of the tenant would not have been such as to have constituted a disseisin. The repairing of the fence, setting aside the deed, would have been neither a disseisin nor a trespass. This was an ancient fence, and inclosed the lots as a general field, there being no partition fence between the allotments to Martin and Timothy ; and as Timothy improved no part of his allotment, which was principally woodland, he was not bound to repair the fence, nor had a right to prevent Martin from repairing it, so as thereby to leave his field exposed to cattle. *Vide St.* 1785, *c.* 53, concerning general and common fields, § 12.[1] Nor was the depasturing of the small strip of improved land included in Timothy's allotment either a disseisin or a trespass. The tenant had a right to turn his cattle into his own pasture ; and if they strayed into Timothy's portion of the pasture, it was no trespass. As to cutting the trees and removing the old hovel, they were mere trespasses, supposing there had been no deed from Timothy. The deed from Timothy was not followed by any apparent change in the possession. If it had not been made, no doubt the visible possession and occupation would have remained the same. The old fence would not have been removed, and there would have been no partition fence, for it would have been useless. To Martin it would have been an expense without profit ; and it could have been of very little profit to Timothy. The little strip of cleared land which fell to his share could not have been made to yield a profit equivalent to the expense of fencing it. The tenant's possession, therefore, considering the attending circumstances, is hardly sufficient to put a party upon inquiry, and is very slight ground for implied notice of a prior deed.

We are therefore of opinion that there is no legal presumption of notice arising from the facts in the case, and that the verdict cannot be sustained.

We have been led to this conclusion without considering the evidence on the part of the demandant. That evidence is very strong to negative the fact of notice. Whether if the

---

[1] Revised Stat. *c.* 43, § 29.

possession had been such as to raise a legal presumption of   M'Mechan
notice, it might not be rebutted by other evidence, is a ques-   *v.*
tion upon which we give no opinion.[2]                         Griffing.

*Verdict set aside and a new trial granted.*

---

[2] The following cases will show under what circumstances a second
purchaser or an attaching creditor has been held to have had sufficient notice
of a prior unrecorded deed, to defeat his purchase or attachment. *Cushing*
v. *Hurd,* 4 Pick. 256; *Newhall* v. *Burt,* 7 Pick. 157; *M' Gregor* v. *Brown,*
5 Pick. 174 ; *Clark* v. *Jenkins,* 5 Pick. 280 ; *Shaw* v. *Poor,* 6 Pick. 86; *M' Fall*
v. *Sherrard,* 1 Harper's (S. Carol.) R. 295; *Webster* v. *Maddox,* 6 Greenl.
256 ; *Stanley* v. *Perley,* 5 Greenl. 369; *Doe* v. *Allsop,* 5 Barn. & Ald. 142;
*M'Neal* v. Cohill, 2 Bligh, 228; *Dudley* v. *Sumner,* 5 Mass. R. 438 ; *Marshall*
v. *Fisk,* 6 Mass. R. 24 ; *Davis* v. *Blunt,* 6 Mass. R. 487 ; *Browne* v. *Maine
Bank,* 11 Mass. R. 153; *M'Donald* v. *Leach,* Kirby, 72 ; *per Hosmer,* C. J.,
4 Connect. R 577; *Lambert* v. *Nanny,* 2 Munf. 196 ; 2 Powell on Mortg.
(Rand's ed.) 631