The opinion of the court was delivered by
Tn. gum an, C. J.
This was an action for goods sold and delivered, See. brought by Simeon Crane, the defendant in error, and plaintiff below, against Joshua Wright, surviving partner of Samuel Wright, deceased, the plaintiff in error. There is no question as to the sale and delivery of the goods by the plaintiff to Samuel Wright, jun.; but Joshua Wright, the defendant, denied that he was a partner of Samuel, and that was the point in dispute. On the 28th of December, 1812, the affidavit of Richard Peters, jun., attorney for the plaintiff, was filed, stating that he verily believed, that certain papers material to the issue between the parties, among which was a deed, containing articles of partnership between the defendant and Samuel Wright, jun., were in the possession, or power, of the defendant. Whereupon a rule, returnable on the Saturday following, was laid on the defendant, to show cause why he should not produce the said papers on the trial of the cause. And, on the 20th of February, 1823, the rule was made absolute. On the 25th of February, 1823, the court made an order, that the defendant should produce the said papers on the trial of the cause, or satisfy the court why it is not in his power to do so. On the 19th of Jlpril, 1823, a rule was entered for taking the depositions of witnesses, in pursuance of *450 which several depositions were taken. On the 3d of November, 1823, a special jury was sworn in the cause, and the solemn affirmation of the defendant was produced, stating, “that he hath not in his possession, custody, or power, a certain article of agreement, said to be executed by him the said defendant and Samuel Wright, 'jun., relating to a partnership, or concern in lumber, dated the 18th of June, 1816, as called for by the annexed rule, and that it is not in his power to produce the same.” The court thereupon gave the following judgment: — “It is considered by the court, that the defendant has not sufficiently complied with the order of the court, calling on him to produce books and papers, and are not satisfied with the affidavit produced by his counsel, to excuse him for non compliance; and, therefore, they do award judgment to the plaintiff by default, and discharge the present jury from the said cause; and, on motion of the plaintiff’s attorney, do make an order in the nature of a writ of inquiry, to charge the the jury attending at this present court, to inquire of the damages and costs sustained by the plaintiff in this action.” In pursuance of the interlocutory judgment, a jury was sworn, who assessed the plaintiff’s damages and costs, for which final judgment was entered. Several errors in this record have been assigned, viz:
1. That the order for the production of certain books and papers by the defendant was illegal.
2. That the judgment by default was illegal.
3. That all the proceedings after the judgment by default were illegal,
1., The reasons assigned for the illegality of the order on the defendant, to produce the articles of partnership, are, that there was no proof that any such articles were ever executed, — or if executed, that they were in the possession of the defendant.
The power exercised by the court, was derived from an act of assembly dated the 27th of February, 1798. By this act, “ the Supreme Court, and several Courts of Common Pleas in the state, are authorized, in any action depending before them, on motion, and good and sufficient cause shown, by affidavit, or affirmation, and due notice thereof being given, to require the parties, or either of them, to pr-oduce books or writings in their possession or power, which contain evidence pertinent to the issue, and if either party shall fail to comply with such order, and to produce such books or writings, or satisfy the said courts, why the same is not in the party’s power so to do, it shall be lawful for the said courts, if the party refusing shall be a plaintiff, to give judgment for the' defendant, as in cases of nonsuit; and, if a defendant, to give judgment against him by default, so far as relates to such part of the plaintiff’s demand, or the defendant’s defence, to which the books or papers of the party are alleged to apply.” It would weaken the efficacy of this act, very much, to decide that positive proof was necessary, of the existence of the papers called for, or of their *451 being in the power or possession of the adverse party. Neither does the safety, or reasonable protection of the adverse party require so rigid a construction. Because the order is not peremptory, but in the alternative — to produce the papers, or satisfy the court, why it is not in the party’s power to produce them. This is a remarkable expression — why it is not in the party’s power. It seems, as if the proceeding was intended to be somewhat in the nature of a a bill of discovery; — the party is required, not barely to say that the production of the papers is not in his power, but why it is not. It may be that it is not in his power, because he has put it out of his power, by his own act. He may have delivered them to another person, for the purpose of putting them out of his power. Now, the court has a right to be satisfied on this point, for so says the act of assembly. In the present instance, the affirmation of the defendant, that it was not in his power to produce the articles of agreement, was not satisfactory to the court; and I cannot say that their dissatisfaction was unreasonable. There certainly was probable ground for a belief, that the paper was in the power of the defendant. Such a paper had been seen, and was traced to the hands of Samuel Wright, after whose death, being a partnership paper, the possession would naturally come to the surviving partner, the defendant. Now, all that was required of the defendant was, to show why he did not produce this paper. He might have declared, if the fact was so, that such a paper never existed— that he never executed articles of partnership; or, if executed by him, that they were never in his possession; or, if once in his possession, that they had gone out of it, and how. Instead of any thing like this, the defendant confined himself to a naked denial that the paper was at that time in his possession, or power; which certainly left a strong suspicion, that he did not disclose every thing within his knowledge, for the satisfaction of the court. The case of Rose v. King, and others, 5 Serg. & Rawle, 246, has been relied on by the counsel for the defendant. But that case is quite different from the present, for there, besides other fatal objections, the order to produce a paper was made on a person not a party in the suit. But this order was made on the defendant; and, in my opinion, was warranted by the act of assembly.
2. But, it is said that the judgment by default was illegal, because a jury had been sworn, and the parties were both in court True, the defendant was in court — but the judgment was not given against him because he made default in appearance, but because he had not satisfied the court why he did not produce the articles of .agreement; and, in that ease, the judgment was according to the act of assembly. The order of the court was, to produce the papers at the trial, so that it could not appear that they would not be produced, until they were called for by the plaintiff, after the jury was sworn, and in the course of the trial. In that situation, nothing *452 could be done, but to discharge the jury, and enter judgment against the defendant by default.
S. It is contended, however, that after the judgment by default, a writ of inquiry of damages should have issued in the usual form. That course might have been taken, but it does not follow that it was the only lawful course. We have an old act of assembly, made in the year 1722, 1 Sm. L. 139, by which it was enacted, “that, in order to prevent the excessive charges that have of late arisen, upon executing writs of inquiry of damages, the justices who give any interlocutory judgment, may make an order in the nature of a writ of inquiry, to charge the jury attending at the same, or the next court after such judgment is given, to inquire of the damages and costs sustained by the plaintiff,” &c. Now, this act of assembly has been exactly complied with in the present instance, and all that can be said against the proceedings is, that the act is obsolete. It must be a very strong case, to justify the court in deciding, that an act standing in the statute book, unrepealed, is obsolete and invalid. 1 will not say that such a case may not exist — where there has been a non user for a great number of years — where, from a change of times, and manners, an ancient sleeping statute would do great mischief, if suddenly brought into action — where a long practice, inconsistent with it, has prevailed, and especially, where, from other and later statutes, it might fairly be inferred, that, in the apprehension of the legislature, the old one was not in force. But this is not the case with the act of the year 1.722. Its provisions are not unsuited to modern times. It imposes not hardship on the defendant, who is secured in a fair trial. And, indeed, it has this advantage, that the proceedings are conducted under the eye of the court. There is no pretence, therefore, for saying that it is obsolete. These are all the exceptions which have been taken to ths record. I am of opinion, that neither of them has been supported, and, therefore, the judgment should be affirmed.
Judgment affirmed.