OLIVER COWLES *against* WICKLIFF COWLES.

2pw 139
f221 1535

IN ERROR.

The petition and affidavit of a party to a suit, to compel the production of papers by the opposite party need only describe such papers with reasonable certainty.

On an application to compel the production of papers, very much is left to the sound discretion of the Court; and when it is exercised, it will require a strong case to induce this Court to reverse their judgment.

A judgment by default against a defendant, in an action on the case, for the non-production of papers, or for not assigning sufficient reason why he does not produce them, is an interlocutory judgment: and the sum due may be liquidated by inquisition.

WRIT of error to the Common Pleas of Crawford county.

This was an action on the case, brought by *Michael Cowles,* against *Oliver Cowles.* The plaintiff filed a declaration containing four counts, 1st. For money had and received. 2. For money lent. 3. For work and labour done. 4. *Quantum meruit* for work, &c.

The defendant pleaded *non assumpsit infra sex annos,* payment and set off with leave, &c.

On the 14th February, 1828, the plaintiff presented and filed the following petition:

"Plaintiff saith that the defendant being indebted to him, gave him two promissory notes, dated in the year 1819, he thinks both dated 19th Sept. 1819; one for $431 or thereabouts, payable in one year; the other for $772 or $775 or thereabouts, payable in three years. The notes, with other papers of the plaintiff, were left in a tin trunk belonging to him, at the house of the defendant, and in his possession: and upon application to the defendant since, he has refused to give them up."

Whereupon the Court made an order upon the defendant, under the act of 27th February, 1798, to produce said notes, &c.

On the 15th April, 1828, the defendant made and filed the following affidavit:

"CRAWFORD COUNTY, ss.

" *Oliver Cowles,* being duly sworn, doth depose and say, that it is certainly out of his power to produce the notes called for in the within affidavit and notice; and that if such notes ever did exist, they have long since been fully and entirely satisfied. And that at the time the notice was served on the defendant,

Oliver Cowles *v.* Wickliff Cowles.

nor at any time since, was it in his power to produce said notes."

The plaintiff having objected to this affidavit, on the ground of its being evasive and insufficient, the defendant appeared in Court, and underwent the following examination.

*Oliver Cowles* being sworn to make true answers, says—he never saw the notes described in the notice, to his knowledge. I have no knowledge or recollection of ever having given such notes. There was a tin trunk left in my possession by *W. Cowles;* it was locked, there was a lock on it. I never examined it to see if it was locked, I never examined the contents of the trunk. I do not know what became of the trunk. It is not in my house to my knowledge. I have not seen it since before the suit was brought. *W. Cowles* had lived at my house and was gone about a year before. It was a small trunk, 9 by 6 inches—he has other property there now. I have looked for this little box where it used to stand. I have no knowledge what has become of it.

*Cross examined by plaintiff:*

I did give *W. Cowles,* two notes a number of years ago. I can't tell if they were given in 1819; one was not for $431. I can't tell the exact sum, but it was for less than $400, it was not near $400. I think it was upwards of $300. I can't tell what the other note was. *Quest.* Was it for 5, 6 or 700 dollars ? *Ans.* I can't tell certainly if it was for upwards of $500—I guess it was—It was not for upwards of $600. *W. Cowles* did tell me that these notes were in that trunk, and requested me to give him up that trunk. I did not refuse to deliver it. I told him he might have it ; that was in October or September, 1826, I have not seen it to my recollection for some time previous to that. I can't say when I did see it. It commonly stood on the bureau, or back of it, when he left it there. I did not remove the trunk from that place, nor tell any other person to remove it. I did not know any other person removed it. I believe he kept his papers in that box. When I told him he might have it, I did not know but what it was then on the bureau. No person had told me *W. Cowles* was coming for his trunk, that I recollect of, a *Mr. Reynolds* did not tell me so. I have never told *W. Cowles,* to my knowledge, that he should never take those notes away from my house. I don't know or recollect that I had any conversation with *W. Cowles* about taking them away. I believed I wished him not to take those notes away ; and I believe I expressed that wish to him. Did you not tell *W. Cowles,* when he came to the field to ask for the trunk, that it was where he could not get it? I did not—The trunk had been on the bureau for a year or two. The latter part of the harvest, before *W. C.* talked with me about settling ; and we had a settlement by agreement. The trunk was in

Oliver Cowles *v.* Wickliff Cowles.

sight at the time of that conversation.   I think he talked of taking away the trunk at that time.   I do not recollect that I expressed a wish he should not take the trunk away.   I know the family did. I guess its likely I did.   I told him if he would come down in six weeks I would do just as I had agreed with him.   I did not tell him I would settle with him and secure him.   I told him to come to Meadville and finish the settlement.   Did you then go from the harvest field to the house together?   No, I went in when he was there.   He took the notes out of the trunk, and said, if you wish to be an honest man you can.   I told him I'd just do as I had agreed.   I believe I did put the notes in there again.   I guess I did not tell my little boy to take the trunk, and put it on the bureau.   I can't tell how long it remained on the bureau. State the amount of these notes.   I can't tell more than I have. I can't tell their date, nor the year.   I can't tell the exact amount, I guess one was for about $500 and the other $325.   I can't speak with certainty as to the amount.   How can you say you never saw the notes described in this notice?   Because I don't think they were so large.   I do not know the date was 1819 ; the notes were on interest.   I can't tell certainly if they were payable on demand.   I guess one was payable in one year.   I can't tell if the whole was payable in three years, or two years.   The smaller note was payable in one year.   The other was on longer credit. My family consisted, when the trunk was missing, of a wife and 5 sons: but four at home.   *Mr. Day's* daughter was at my house part of the time, between August and October, she was living there when *Wickliff* came down.

The Court, *(Shippen, president,)* gave judgment by default for the plaintiff, and directed an inquest to be taken at the next term, to ascertain for what sum final judgment should be given.

At the next term the cause was tried before a jury, and a verdict was rendered for the plaintiff for $1958 70, the amount of two notes, and $360 for six years' services: amounting to $2318 70.

In this Court these errors were assigned.

1. The facts disclosed in the petition of the plaintiff below are not sufficient to warrant the Court to render a judgment by default against the defendant.

2. The Court erred in rendering a judgment by default, on all the facts disclosed.

*Derickson* and *S. B. Foster* for plaintiff in error.

To authorize a judgment by default, under the act of 27th February, 1798, three things are necessary.   1. The paper must be in the possesion of the opposite party.   2. Material to the issue. 3. Described with certainty.   These things must appear by the affidavit of the plaintiff; and they must appear with certainty, so as

(Oliver Cowles *v.* Wickliff Cowles.)

to enable the prothonotary to enter the judgment for the proper amount. *Rose* v. *King*, 5 *Serg. & Rawle*, 244. It does not appear by the affidavit of the plaintiff in this case, that the defendant had the notes in his possession; the defendant swears positively that he had them not. There could be no judgment entered by the prothonotary upon the plaintiff's affidavit, because of its uncertainty.

*J. J. Pearson* and *Wallace* for defendant in error.

The papers are described with sufficient certainty to apprise the defendant of what was called for; no prudent man could describe them with more certainty. The judgment by default did the defendant no harm, because the amount of the notes were made certain by evidence before the inquest. The answer of the defendant is not sufficient, because it does not satisfy the Court *why* he does not produce the papers; in an investigation about the existance of papers, much must be left to the discretion of the Court. *Wright* v. *Crane*, 13 *Serg. & Rawle*, 447

The opinion of the Court was delivered by

ROGERS, J.—There is nothing in the plaintiff's exceptions, which has not been already decided in *Wright* v. *Crane*, 13 *Serg. & Rawle*, 450. The act of the 27th February, 1798, under which this proceeding is had, does not require that the affidavit should be positive. It would weaken the act very much, says *Chief Justice Tilghman*, to decide, that positive proof was necessary, of the existence of the papers called for, or of their being in the possession of the adverse party. The affidavit on which the Court made the order, is as positive as the nature of the case would admit: as much so, as a regard to truth would allow. And this is all that can be reasonably required. The deponent avers the existence of two notes, given by the defendant to him, dated in the year 1819; and thinks that both were dated the 19th September, 1819. That one was for the sum of $431, or thereabouts, payable in one year; the other, for $772 or $775, or thereabouts, payable in three years. He also distinctly avers, that these papers were left by him in a tin trunk, at the house of the defendant, and in his possession; that he had applied to the defendant for their redelivery, and that he had refused to give them up. From this description, the defendant could be at no loss to know what papers the plaintiff required him to produce. Nor is it wonderful, that the plaintiff should be unable to fix the precise date, or ascertain the exact amount; this is an occurrence that may well happen, and frequently does, particularly to persons extensively engaged in business, or where their recollection may have failed from lapse of time. Under these circumstances, it was incumbent on

(Oliver Cowles *v.* Wickliff Cowles.)

the defendant to deny the plaintiff's allegation altogether, or to admit they were once in his possession, and to assign some reason why it was not in his power to produce them. If he had denied the existence of the notes, or had said that they were never in his possession, that he had re-delivered them to the plaintiff, or that they had been destroyed by accident, if these allegations had been made, and had been believed, it would have accounted satisfactorily for their non-production.

The Court of Common Pleas, who were the judges of the whole case, were not satisfied with the answer; nor can we say there was any thing wrong in this. It would be perilous for us to reverse, their decision, on a mere difference of opinion, in regard to the weight of testimony; particularly when it is recollected that they had the advantage of a *viva voce* examination of the defendant. But here there is something more than a presumption that the notes were once in the possession of the defendant. It is certain they were at one time in his custody. Why then does he not produce them, or give some reason why, in the language of the act, it is not in his power so to do. This is a proceeding in the nature of a bill of discovery, and as such, should be viewed with a favorable eye. The object is to wrest from the defendant papers, fraudulently withheld from the rightful owner. The Court must decide, not from detached sentences, but from the whole examination. From this the inference is strong, that the defendant could have given reasons, if it had suited his purposes, why it was not in his power to produce the notes. If the defendant has been injured, it is his own fault; as it is manifest, there has been a want of candour and fair dealing on his part. The act imposes no hardships.

Besides, we do not see that the defendant has been injured; as the plaintiff was bound, notwithstanding the judgment by default, to prove the amount of the notes. This was an action on the case, in which the declaration contained the money counts only: the judgment fixed nothing, ascertained no sum. It was therefore necessary for the plaintiff to give evidence of the amount of the notes. In this, the uncertainty is said to consist; for the complaint is, that the affidavit ascertains no certain sum, for which judgment by default can be given. The judgment being interlocutory, a defect in that particular, can be remedied by evidence at the trial. And this was done here.

Judgment affirmed.