GILPIN et al. v. HOWELL.

Principal may sue on a parol contract by an agent, not disclosing his agency; or for money received and retained under such contract where the consideration has failed.

A. gave verbal directions to B. for the purchase of stock, which was made, and information of the purchase on A.'s account communicated by letter. A. subsequently negotiated a loan with B., to pay for the stock, on his own note, endorsed by C., and the stock purchased, together with other stock, as collateral security. The note was subsequently renewed by similar notes, and a bond about becoming due to C. deposited as a collateral security. The amount due on this bond was received and applied by B. in payment of the last note of A., endorsed by C., which was delivered up. Previous to this A. had signed a receipt in full for a balance of account, charging him with the price of the stock purchased, and giving him credit for the proceeds of his discounted note. In an action for money had and received, by C. against B., founded on the failure of consideration in the note given by B., endorsed by C., it was held, 1. That a bill of particulars, stating the claim to be for the balance collected on the bond, was insufficient, for the bill should disclose the gist of the action, which in this case

was the failure of the consideration of the note. 2. That A. was competent to prove the contract, and that it was made by him as agent for C., though the fact was undisclosed during the transaction. 3. That he was not incompetent by reason of liability on the note. 4. Nor because of his being a party to a negotiated note; for he was called to prove failure of consideration by matters subsequent to the negotiation.

It seems that where one purchases stock for another, and takes a transfer on the books of the bank into his own name, it is sufficient if he always retain so much of the same stock as will enable him to transfer to his principal, on demand, the whole amount purchased for him; and that it is not necessary that he should retain the identical scrip or shares; and where there is a residue of such stock in the name of the agent, or of a pledgee, at all times equal to the amount purchased or pledged, such residue will be taken to be the stock belonging to the principal or pledgor. And where the principal desired the agent to procure a new loan on the security of the stock thus purchased, and which had been pledged to the agent for a previous loan, with liberty to sell in certain contingencies, expressing an expectation that no one need be known in the transaction but the agent: it was held to be no defence to the agent's right, in an action respecting the price of the stock, that he had taken a transfer thereof in his own name, jointly with other stock of the same bank, so that the particular shares could not be distinguished.

And in such case it is competent to prove that it is the custom at the bank, where there are several transfers to order, standing in the name of one person, to give one certificate for the whole amount, in the absence of special directions.

In an action to recover money retained as the price of stock, on the ground that the agent was unable to comply with his contract, a previous demand of the stock is unnecessary.

An order to produce a document made under the act of 1798, is conclusive only of the pertinency of the document. The defendant may, at the trial, prove his inability to produce it. (In this case it would seem the paper was lost before the rule was made absolute.) In such case witnesses may prove the loss of the paper; it is not necessary that the party should be examined.

Circumstances held to be sufficient answer to such an order.

It seems the reading a copy is a waiver of all objection, by reason of the non-compliance with the rule.

In error from the District Court of Philadelphia.

March 3, 4, and 9. The defendant in error, through an agent who acted without disclosing the agency, employed the defendants below, who were stock-brokers to purchase fifty shares of the Girard Bank stock, which was done, and a loan to pay the purchase-money effected on fifty shares of the Mechanics' Bank stock, and the stock thus purchased, as collateral security. This loan was extended on the agent's own notes, endorsed by the plaintiff below, and the security of the stock already mentioned; and subsequently, on new notes being given, a bond of a third person, belonging to the plaintiff, was deposited with defendants, as an additional security. The dividends on the stock, and the money due on the bond, having been received by the defendants and applied to the notes given for the purchase-money of the Girard stock, an account was stated, the balance paid over, and the notes and shares of Mechanics' Bank stock, held as collateral, delivered up.

The action was assumpsit for money had and received, money lent, and on an account stated.

The bill of particulars stated the claim to be for the balance collected on the bond, with interest from the day of receipt, and also for the amount received on the sale of the fifty shares of the Mechanics' Bank stock belonging to the plaintiff.

At the trial before SHARSWOOD, J., the plaintiff, under exception, proved, by E. Y. Howell, the contract, made by him as her agent, with the plaintiffs for the purchase of the stock, and the loan on the securities mentioned above. This was done without his stating that he was acting for the plaintiff. On the 4th Feb. he received a letter from defendants announcing the purchase for "your account" at sixty days, buyers' option after thirty days. Defendants then objected to the witness that he was incompetent in an action by an undisclosed principal; that he was contradicting the writing, and was such an interested witness as was excluded by the recent decisions, and was generally incompetent. The whole of his testimony was also objected to, as the claim made at the trial was not specified in the bill of particulars. Before the day for the delivery of the stock, the witness obtained from the defendants a loan for the amount of their bill, on the security of the stocks above mentioned; subsequently, for convenience, he proposed its extension to nine months. In this letter of the 26th April, he stated he wished to effect a loan on these stocks, "the lender to be at liberty to sell, should it fall as low as $22 per share, unless other or additional satisfactory security be given, with full power to yourselves to sell, assign, or transfer the stock. With such power I presume no one need be known in the matter but yourselves. On the 30th January, a bond of J. T. to C. J. Howell," the plaintiff, "falls due, which renders it desirable to extend the loan to that time." On the 17th May, defendants replied they had obtained the loan on his note, the collaterals to be the same as they then held, "and the party is willing that we still hold them." This letter was read in evidence by defendants, as mentioned below. The notes here mentioned were drawn by the witness and endorsed by plaintiff. The money raised was applied to the first loan. In the course of renewals, witness's note at ninety days, for $1760, dated Aug. 23, 1841, endorsed by plaintiff, was given; which plaintiff produced at the trial. This note was paid by a similar one for $1775 75, at ninety days from Nov. 24, 1841, which was also produced by plaintiffs at the trial. The defendants here renewed their objection to the witness, but it was overruled.

J. T.'s bond, due Jan. 30, 1842, was also handed over to defendants as a security, and the proceeds received in payment of the note. Defendant's account showed the amounts to have been $500 and $1761 28, received at different times from the obligor. On cross-examination, the witness stated he was trustee for the plaintiff, who was his sister; that the funds came from her father's estate; and he had paid for the shares of the Mechanics' Bank stock by a check, as her trustee; that defendants had never offered to transfer the Girard stock, nor had he demanded it or refused to take it.

Plaintiffs then proved, that in 1841, the transfers of the Girard stock were made on the back of the certificates; and also gave in evidence defendant's letter to E. J. Howell, of May 20, 1841, stating the sale of his note, due 23d August, and that the stock of the Girard and Mechanics' Banks, "heretofore in our name as collaterals, will be retained as security for this note."

In the enclosed account, which was with E. J. Howell individually, he was charged with the cost of the Girard stock, and credited with the dividends of the Mechanics' stock; deducting from this balance the proceeds of his note, there remained a balance due him of $17 75, which he was requested to call for: on the 28th May, 1841, this was paid over. When the money was received on the bond, defendants urged E. J. Howell to settle, and receive the balance due him, as it was deposited in bank; there being then a general suspension, and every security uncertain.

On the 7th Feb. 1842, he replied that his sister declined receiving a check on any bank, but would receive specie for her balance, and that defendants had better keep it until wanted by her.

On the 19th Feb. 1842, Mr. Mallery, a member of the bar, wrote the defendants, stating that Dr. E. Y. Howell had called on him with reference to some business he wished settled, adding, "from the information the Doctor has received, he is not satisfied with regard to the alleged purchase of fifty shares of Girard Bank stock, and some matters connected with it, as an explanation would probably satisfy him," an interview was proposed.

This gentleman, in his examination, stated that he accompanied the counsel of defendants to their office, and stated the difficulty was, the allegation that they had not purchased the Girard Bank stock, and held it for the plaintiff; that is, not the identical stock. Papers were exhibited as evidence of the purchase. His impression was, they said it was not necessary to hold the same scrip or

stock, if they had the same kind when called for. No certificates were produced, and no demand was made.

One of the officers of the bank stated it was usual to file away the certificates having the transfers endorsed on them; the mode of transfer on the books he was ignorant of, not being in that department.

Plaintiff having closed, the defendants called on plaintiff to produce certain papers and letters enumerated in a rule of court taken under the act of Assembly on the 4th of May, 1844; made absolute as to the papers therein mentioned, Sept. 17. All these documents were produced except the letter from defendants to Dr. Howell, dated May 17, 1841. A nonsuit having been moved for, the plaintiffs called E. Y. Howell, who stated he was the agent of the plaintiff, lived with her, and had access to all her papers, and the custody of them; he was under the impression that this letter was in the bundle of papers delivered to Mr. Mallery on the occasion mentioned by him above. When that bundle was returned, it was not among them; he had made several searches for it without success, considering it important.

Mr. Mallery stated he had delivered the papers in his possession to Dr. Howell, or the counsel for the plaintiff; he had not made a particular search, but had looked among his papers and found none relating to this suit. The motion for a nonsuit was then renewed, and refused, and an exception noted. Defendants also moved for the withdrawal of a juror, and a continuance, which was refused and exception taken. Defendants then called Harris, a broker, who proved his original bill of sale, and that on the 4th of Feb. 1841, he had sold to plaintiff fifty shares of stock at sixty days, deliverable after thirty days, at buyer's option, on payment of $1625. That on the 6th of April he delivered the stock, but could not state how; he said there were two methods, one by certificate and blank power, and the other by a transfer at the bank to the order of the purchaser. Whether he had a certificate for fifty shares at that time he could not say; he might have had a large one, and put part to order; or several smaller ones; or have given the larger certificate and taken a smaller one in change. It was usual to let the stock lie to order until it was wanted. He also proved the payment for the stock. The learned judge refused to permit the witness to answer the question, whether it was usual, when several orders are left standing to the credit of a party, for the bank, there being no special orders or directions, to give one certificate for the whole. The witness was unable to say whether

he had the stock on the day of sale, and could not tell from the stock ledger; but it was obtained by the day of delivery; whether by putting to order or by a certificate he could not say.

The defendants then read the letter of the 7th February, from E. Y. Howell, which was post-marked Philadelphia, Feb. 12, already mentioned; and also one from the same, dated the 11th, post-marked as the last, and of the same tenor, adding that his sister was willing defendants might use the money due her until wanted by her.

They then read a press copy of the letter of the 17th May, mentioned in the rule to produce; its contents have been already stated; also the check to the broker, and E. Y. Howell's receipt in full for the balance due him, being $17 50, on the 28th May, 1841, mentioned above. Also a letter from the plaintiff's counsel, June 22, 1842, stating his client's desire to receive the fifty shares of the Mechanics' Bank stock, transferred to plaintiffs and held as collateral for the note endorsed by her, which had been paid and delivered up.

On the 24th, this stock was transferred; on the 27th of May, the balance of the account, $514 96, stated with Dr. Howell, was received by Dr. Howell and the plaintiff, and also his note of Nov. 24, 1841, without prejudice to any claim either might have on defendants. In this account the debit side was the amount of the note, and the credit the amount of the receipts on the bond.

His honor instructed the jury that it was incumbent on the plaintiff to show that the renewed note was given without any consideration; if so the defendant had no right to apply the proceeds of the bond to the payment of it. If it was without consideration, its redelivery was unnecessary. Whether it was without consideration was the main point: if the stock was not purchased as alleged, of course there was no consideration. The testimony of Harris, if relied on, sufficiently made out a purchase for the purpose of this case. When the stock was purchased and pledged as collateral security to the defendants, their character of agent ceased, and they became pawnees, pledgees, or bailees. If, when they received it under this engagement to hold it as a security for their loan or advance, they threw it undistinguished into the general mass of their own stock, or that of other persons in their custody, or parted with it, though they may have replaced it with other stock of the same kind;—if when the debt was paid and the pledge redeemed, they had not the same identical stock in their possession which they originally purchased and held for plaintiff, then plaintiff was entitled to a verdict.

The question whether the identical stock was retained for delivery was submitted to the jury as one of fact.

His honour further instructed the jury, that if Dr. Howell was believed, the letter of the 26th April, 1841, did not, as the plaintiffs contended, constitute the contract, and they had no power to sell at any time. If that letter was the contract, then the power to sell depended on the stock falling below $22, and satisfactory security not being furnished; that it appeared the bond was furnished as satisfactory security : if so, they had no such power. If they did sell, it was for them to show where and for how much; and if, when called upon, they neither produced the identical stock nor gave any account of it, this would be a good defence to the note, and the plaintiff be entitled to recover.

The errors assigned were, First : 1. In admitting Dr. Howell as a witness ; 2. In refusing a nonsuit for the non-production of the letter under the order of court ; 3. In admitting Howell as a witness to account for the non-production of the paper, and refusing a nonsuit after his examination and that of Mr. Mallery ; 4. In refusing to continue the cause under these circumstances ; 5. In overruling the question to Harris ; 6. In admitting Howell's testimony under the bill of particulars. Second : In charging, 1. That it was unnecessary to return the note of November 14, 1841, before a recovery could be had ; 2. That a recovery could be had under the bill of particulars ; 3. That a recovery could be had if defendants had either parted with the stock or mixed it with their own, so that it could not be distinguished or discriminated ; 4. That a demand of the Girard stock was unnecessary ; 5. As to the effect of the letter of April 26, 1841 ; 6. That the drawer or endorser of the note of November 24 might have shown, in a suit on it, that it was given without consideration, or that the consideration had failed, and, if such were the facts, the money received on the bond might be recovered under the bill of particulars.

*C. Gilpin*, for plaintiff in error.—Without the testimony of Howell, the plaintiff had no standing in court. Is he competent, after the documentary evidence showing a purchase by him, and his own admissions that he had not communicated the fact of the agency, to withdraw himself from the position of principal and become a witness on his unsupported allegation of agency for the plaintiff? The letter announcing the purchase for him was acquiesced in, and the note of counsel first applied to in the cause shows that the present plaintiff was unknown to the defendants, or

to any one else, as a party. All this was proved by the plaintiff, and shows a written statement of the relation of the parties which cannot be altered by parol. Story on Agency, sects. 266, 267, 160, 288, 270; Jones v. Littledale, 6 Adol. & El. 486; Patterson v. Gaudasequi, 15 East. 62; Addison v. Gaudesequi, 4 Taunt. 574 So the principal could not sue on such a written contract. U. S. v. Parmele, 1 Paine C. C. R. 252. [*Per Curiam.*—There was no evidence there of a contract as agent.] It appears from the relation of the parties—the contractor being the marshal. Ripley v. Thompson, 12 Moore, 55, (22 E. C. L. R.) In Clark v. Wilson, 3 Wash. C. C. R. 560, where a charter-party was executed by one in his own name, it was held the principal could not sue. Here the defendants were bound to deliver to Dr. Howell, and that right was a chose in action to support which he was incompetent as a witness, under Clover v. Painter, 2 Barr, 46; Smythe v. Craig, Ib. 153; and the numerous cases of the same character in this court. The grounds of this action are the same as would have been used as a defence to an action on the note, where this witness would have been incompetent. Steinmetz v. Currey, 1 Dall. 234; Zeigler v. Gray, 12 Serg. & Rawle, 42; Cropper v. Nelson, 3 Wash. C. C. R. 125; Griffith v. Reford, 1 Rawle, 196; Rhodes v. Lent, 3 Watts, 364; Bank v. Walker, 9 Serg. & Rawle, 229; Smith v. Thorne, 9 Watts, 144; Greenl. Ev. sect. 417; Bickerton v. Burrell, 5 Maule & Sel. 383. The evidence was also inadmissible under the bill of particulars. Babcock v. Thompson, 3 Pick. 446; 2 Saund. Pl. & Ev. 699; 2 Bos. & Pul. 243. The party cannot purge himself at the trial after the rule to produce is made absolute. [BURNSIDE, J.—The practice is universal.] McNair v. Wilkins, 3 Whart. 551; Tuttle v. Mechanics' Loan, 6 Ib. 216; Dunham v. Riley, 4 Wash. C. C. R. 126; United States v. 28 Packages, Gilp. 306; 13 Serg. & Rawle, 447. The evidence of Harris was not to prove a custom contrary to the common law, but to rebut the presumption of mixture. Of this there was no evidence: no demand was ever made. The mere fact of mixture, if the pledgee always retains as much of the same kind as the thing pledged, is sufficient; nor need the identical thing be retained. Nourse v. Prime, 4 Johns. Chan. Rep. 490, 7 Ib. 69, where a precisely similar case occurred.

*Bleight*, contrà.—It is a familiar principle, that a pledgee parting with the pledge loses his lien; and here there was no evidence of a retention of any stock, even of the same character, much less the identical stock pledged. No interest has been shown in Howell.

In 6 Whart. 216, the party was permitted to purge himself at the trial, and a disinterested witness is preferable; besides, the plaintiff read his press-copy of the letter. The bill of particulars need only set forth the items of demand, which was done here with great exactness. The main point is the effect of mingling the stock pledged with the pledgee's own property. Allen v. Dykers, 3 Hill, 593, affirmed in the court of errors, is against the cases cited.

*Rawle*.—In this case there has been no transfer, or offer to transfer the stock to the plaintiff, or any account furnished of the proceeds. That an agent is competent to prove his agency and his own acts, is settled, 1 Greenl. Ev., sects. 416, 417; 2 Ib. sect. 63; McGunnagle v. Thornton, 10 Serg. & Rawle, 251; McDowell v. Simpson, 3 Watts, 135. How is he liable? Can the verdict and judgment, either way, in this case, be evidence for or against him? The offer was to show a custom to transfer contrary to the charter of the bank. As to the charge: If the money was applied to a note without consideration, clearly the plaintiff could recover. The reasoning of the judge is the best argument. He refers to the case of an agent receiving a new note to himself, in lieu of one to his principal—the case of stock which has risen in value, and the pledgee has become insolvent, when the pledgor necessarily becomes a mere creditor. It is the necessity of protecting parties from the frauds of their agents that is the foundation of this rule. These principles are supported by authority. Story on Bail., sects. 309, 310, 318, 321, 322, 339, 343; Garlick v. James, 12 Johns. 146; Hurd v. West, 7 Cow. 752. In Nourse v. Prime, there was explicit evidence of the retention of as much stock of the same character. Hampton v. Speckenagle, 9 Serg. & Rawle, 212.

*Meredith*, in reply.—There are three matters to be considered—the law of procedure, the evidence, and the contracts. The plaintiff was a surety until converted into a principal by the evidence of Howell, who drew the notes, purchased the stock, and borrowed the money. The bill of particulars was false in one item; for the mechanic's stock we had a receipt, and of course came to the trial prepared to prove merely that the money claimed was received on a valid note, given for property purchased for the maker. That the consideration had failed, by some supposed transactions subsequently, was not stated, nor could the parties be prepared to rebut presumptions of matters resting in imagination

only. If there had been a special count, of which the bill takes the place, would not a plea averring the application to the note be a bar? The question of the paper is important. The party submitted to the order; and the proof is not of a loss since the order: nor was the party herself, nor the counsel who at one time had the paper, examined. We did not wish to show a custom contrary to the charter, but consonant; merely that not more than one certificate was given, when a number of shares were transferred on the same day. The witness, being apparently a principal, cannot remove the objection by his own testimony. Griffith *v.* Reford, 1 Rawle, 196. The rule that a party to a note cannot impeach it is settled: if so, it is certainly immaterial that the note is delivered up, and the suit is to recover the funds applied in payment. There has been no claim of a right to sell but under the contract; nor was there any testimony that they had not kept the stock. It is shown that it was at the parties' own request that the stock was held by defendants as their own, so that the names of others might not be known; and this alone is a sufficient answer to the objection of mixture. But can this action be maintained? The note was for the purchase of stock, which was purchased: hence, there was a consideration which could not be taken away. Any subsequent matters might be the subject of an action or set-off, but could not possibly impair the past consideration on which the money was received, with the assent of all parties.

*April* 3. BELL, J.—The first error assigned presents for consideration the several bills of exception, taken upon the trial, to the decision of the court below, admitting E. Y. Howell as a competent witness for the plaintiff. If the transaction from which this litigation springs, be as it was stated by this witness, then, unquestionably, Clarissa J. Howell, the plaintiff below, had a right to bring suit in her own name. Though there are cases in which it has been held that, generally speaking, a principal may not sue upon a *written* contract made by an agent in his own name, though the agency be disclosed, (Story on Agency, sec. 160; United States *v.* Parmele, 1 Paine, C. C. R. 252,) yet the general rule is, that in cases of parol contracts the right of action may be asserted by him from whom the consideration proceeds, and certain it is, that where an agent enters into a verbal contract, even without disclosing his principal, the latter may maintain an action upon it. Duke of Norfolk *v.* Worthy, 1 Campb. N. P. 337; Wilson *v.* Hart, 7 Taunt. 295; Bickerton *v.* Burrell, 5 Maule & Sel. 383; Vischer *v.* Yeates,

11 Johns. 23; McGunnagle v. Thornton, 10 Serg. & Rawle, 251. As is observed by Mr. Justice Bayley in Sargent v. Morris, 3 B. & A. 281, you may bring your action either in the name of the party *by* whom the contract was made, or of the party *for* whom the contract was made. So, too, when money is paid by an agent in pursuance of an agreement made with him in his own name, the principal may recover it back upon the rescinding of the agreement, and if paid upon a consideration that has failed, the owner is entitled to an action for the recovery of it, if he can show the money was his. This last proposition embraces the cause of action, averred by the plaintiff here, and the question is, whether the witness, to whose competency the defendants take objection, was admissible to prove the original transaction? As a general proposition, it will not admit of doubt that an agent is a good witness for his principal, to prove contracts made by the agent, and other transactions in which the principal is interested, provided the case does not turn on the imputed misconduct or negligence of the agent; and he is, also, competent to prove his own authority. This rule is said to be founded in public convenience and necessity; for, without it, it would be extremely difficult to transact affairs of daily occurrence with the freedom which the exigencies of trade and commerce require; and it extends, in principle, to every species of intervention by which business is transacted, unless, in the particular instance, it be overborne by some other rule. Greenleaf on Evidence, sects. 416, 417; McGunnagle v. Thornton, *suprà;* McDowell v. Simpson, 3 Watts, 135. But it is urged by the plaintiffs in error, that there is something peculiar in the relation the witness bears to the transaction he is called to testify to, that makes him an exception to the general rule. It is not pretended that, in negotiating with the Messrs. Gilpin, he exceeded his authority or so misbehaved himself as to make him liable to his principal in any event. But it is, in the first place, objected that he is interested in the event of the suit; and, secondly, that he stands in the predicament of having been, originally, a party beneficially interested in the contracts of purchase and loan, and is, therefore, inadmissible as a witness under the principle settled by Post v. Avery, 5 Watts & Serg. 509, and the kindred subsequent cases. How he is interested in the event of the action has not been distinctly pointed out, and if there be such an interest we have failed to perceive it. So far as appears, a verdict and judgment, either way, could by no possibility affect his rights or liabilities, and it certainly could not be given in evidence for or against him. The only ground suggested, upon which it is

supposed this objection may be supported, is the principle asserted in Hickling v. Fitch, 1 Miles, 208. But all that is ascertained by that case, and the decisions upon which it is based, is that in an. action against a principal, an agent who might be made liable to the plaintiff, in the event of his failure to recover against the principal, is not a good witness to charge the latter. There is, therefore, no analogy between that case and the present. Nor is there greater solidity in the second objection. It may be dismissed with the remark, that the class of cases referred to establish nothing further than that one who is the owner of a *chose in action* cannot, by transferring his interest to another, make himself a witness for the plaintiff, in an action brought upon the *chose*. But the case of this plaintiff proceeds upon the ground that the witness never had any interest in the transaction sued upon. It is not enough to answer, that by the correspondence of the parties, and other evidence in the cause, it appears he negotiated without disclosing the name of his principal. This he might legally do, and, of itself, it gave him no such beneficial interest in the transaction as brings him within the principle of the cases relied on. At most, it is available only as an objection to his credit, not to his competency.

After the plaintiff below had read in evidence the note of 20th Nov. 1841, drawn by E. Y. Howell, in favour of and endorsed by the plaintiff, the witness being still on the stand, the defendants below further objected to him, on the ground that it did not lie in his mouth to impeach a negotiable instrument to which he is a party. Following the doctrine originally broached in Walton *v.* Sheley, 1 Term Rep. 296, as modified by subsequent cases, it is the settled doctrine in Pennsylvania, that a party to a negotiable instrument shall not be admitted to give evidence in avoidance of it, where it has been negotiated in the ordinary course of business, before its maturity. Baird *v.* Cochran, 4 Serg. & Rawle, 397; Bank of Montgomery *v.* Walker, 9 Serg. & Rawle, 236. It seems also to be settled, that where a promissory note appears, by the endorsements upon it, to have been negotiated, a party to it shall not be received to prove that it was not so negotiated, in order to remove an apparently well-founded objection to his competency. Griffith *v.* Reford, 1 Rawle, 197. The reason of the rule is found in the impolicy of permitting one who has assisted to put into circulation a commercial instrument, afterwards to aver a taint upon it at the time it passed through his hands. But the answer to the attempted application of the objection to this case is, that the witness was not introduced to show the

note drawn by him to be invalid at the time it was passed to the defendants below, or, indeed, to prove any fact tending to impeach it. His testimony was confined to independent matter, which, of itself, left the note unquestioned. It is true this testimony was introductory of other evidence tending, as it is said, to show a subsequent failure of the consideration of the instrument, flowing from the conduct of the defendants after the note came to their hands; but this does not bring the proof objected against within the scope of the prohibitory rule, for this stops far short of closing the mouth of a party, altogether, on the subject of the instrument. But, did the exigency of her case require it, the defendant in error might even admit that the direct tendency of Dr. Howell's evidence was to impeach the note in the hands of the endorsers, upon some fault imputable to them, occurring subsequently to their becoming the owners of it, for it is settled that a party to negotiable paper may testify to facts arising after it was negotiated, and which go to destroy the title of the holders, provided always, the witness is not interested in the event of the suit. Mitchell v. Conrow, 5 Whart. 572, and the cases there cited. It has been shown there was no such disqualifying interest residing in the witness, and, consequently, he was competent to testify.

A fourth ground of objection taken against the reception of the evidence of this witness, is, that what he was called to prove was not within the scope of the notice furnished by the plaintiff's bill of particulars. This objection rests altogether upon the insufficiency of the plaintiff's particulars, and may, therefore, be conveniently considered in conjunction with the second error assigned in the charge of the court. These exceptions present the inquiry whether the plaintiff's particular, furnished at the call of the defendants, is sufficiently certain and circumstantial? The rule of practice which sanctions a call for particulars, has for its object definite information to the antagonist party, of the plaintiff's cause of action. To answer this purpose, it has been repeatedly ruled that the particular furnished ought to be as certain and convey as much information as a special declaration. 2 Saunders on Pleading, 699; Babcock v. Thompson, 3 Pick. 446. It must disclose the gist of the plaintiff's action, and if it fail to do so, it is insufficient. The practical meaning and extent of the rule may be illustrated by the case last cited, which was assumpsit for money had and received. The particular stated the plaintiff's claim to be for the value of certain bank notes, particularizing them, received by the defendant for the plaintiff's intestate. On the trial it turned

out that the plaintiff sued to recover money, illegally won from the intestate at cards.   On objection made, his evidence to show this was ruled out, on the ground that, as the illegal gaming was the gist of his action, his particular ought to have disclosed it; for, without this, no notice was given to the defendant of the actual case he was called to meet.   To the same effect is Hale *v.* Fenn, in this court, (3 Watts & Serg. 361.)  There a notice of special matter, under the plea of payment, with leave, &c., stated the defence to a promissory note sued on, to be want of sufficient consideration, and that it was obtained by undue means.   It was held that the notice was not sufficiently explicit to let in proof of particular facts tending to show that the note had been  given for the purchase-money of certain lands sold to the defendant, the title of which had failed.   The court say, such a notice need not be so formal as a special plea, but it must point out the facts and circumstances on which the defence is intended to be rested.   It is hardly necessary to say that, under our practice, notice of special matter of defence is exactly analogous to a bill of particulars, both being required and given with like intent; and, therefore, the rule, as ascertained by the last case, is directly applicable to the case at bar.   What is the gist of the present action?   Certainly, failure of the consideration of the promissory note of Nov. 24, 1841.   At the trial, the evidence on both sides was directed almost exclusively to this point.   There was no dispute about any thing else, so far as the direct issue was involved. How then can it be said the particular furnished to the defendants below instructed them of this allegation, or let them into any knowledge of the circumstances by which the plaintiff expected to establish it.   Judging from the record, it would appear that, up to the time of trial, the defendants did not, certainly, know that Dr. Howell acted merely as the agent of his sister.   When, therefore, they were informed that the action was brought to recover money, received by them from Job R. Tyson, Esq., their attention would be turned to the necessity of proving that the bond held by them, as collateral security, had been legally assigned or transferred to them, and, necessarily, nothing beyond this.   Both upon principle and authority, we consider the plaintiff's particular as entirely too scant to cover his case as he was permitted to prove it.   As the case is to go back for a re-trial upon another ground, this defect will, of course, be amended.

Another exception taken to evidence relates to the admission of the same witness to prove the loss of a certain letter, called for by the defendants below.   This exception is not founded upon any ob-

jection directed against the competency of the witness to testify to the collateral fact to which he was called, but rests upon the ground that, after an order made by the court for the production of papers, the party subject to the order is not at liberty, on the trial, to give evidence showing reasons for the non-production of such papers. It may, therefore, be considered in connection with the second, third, and fourth specifications of the first class of errors assigned; imputing to the court below, mistake in refusing to order a nonsuit because of the non-production of the letter in question. Upon this part of the case, the first question raised is, whether the plaintiff was at liberty to show matter on the trial, in excuse for non-compliance with an order made under the act of 27th February, 1795? The defendants insist that the proper time to show reasons why it is not in the power of the party to produce the documents required, is on the hearing of the rule to show cause why the order should not be made. But the cases which settle the practice under the act, abundantly show the order to be peremptory and conclusive only upon the point of the pertinency of the writings called for. As to the production of them at the trial, it properly pursues the language of the statute, and presents an alternative to the party, either to produce the papers named in it or satisfy the judge why it is not in his power to produce them. For the latter purpose he is at liberty to introduce testimony to show a reason why they are not forthcoming. Dunham *v.* Riley, 4 Wash. C. C. R. 126; Wright *v.* Crane, 13 Serg. & Rawle, 450; McNair *v.* Wilkins, 3 Whart. 551; Tuttle *v.* Loan Co., 6 Whart. 216. It is very proper it should be so. Not unfrequently, a long interval intervenes between the time of the order and the trial, during which the writings may be lost or destroyed, or otherwise put out of the power of the party without any default in him. To deny him the right to show this, and thus subject him to the very severe consequence prescribed by the statute, would be harsh indeed. The privilege, however, is not confined to such a case, but is general in its application.

But it is, secondly, objected, that admitting this to be so, the plaintiff did not show such cause for the non-production of the particular letter as the judge trying the cause should have required. Dr. Howell testified, he had the care and custody of the plaintiff's papers; that he delivered this letter in a bundle of other papers to Mr. Mallery; that when the bundle was returned to him, the letter was not with the other papers, and that, since then, he had made several searches for it, without effect. Mr. Mallery, testified, that he had returned the papers of which he had had possession, either

to Mr. Rawle or Dr. Howell; his impression was, to Dr. Howell; that he had looked among his papers, and found none relating to the suit. It is said, this was not enough, but that the plaintiff and Mr. Rawle, her counsel, ought to have been called to testify they had not the missing paper. But why? there was nothing in the case, showing that either of them ever had the custody of the letter. On the contrary, it was pretty conclusively established, that it had been in the possession of either Dr. Howell or Mr. Mallery, and both of these gentlemen swore they had searched for it in vain. Now, how can we say, without danger of doing injustice, that the judge ought not to have been satisfied with this account of its disappearance? After all, much must be left to the discretion of the court in which the cause is tried, and a very strong case of mistake committed, should be made out to induce the court to reverse the judgment on this ground. But supposing such a mistake to have been committed here, it is very clear the defendants were, in no degree, injured by it. The record shows that, subsequently, they gave in evidence, without objection, a press, and therefore exact copy of the original letter called for, produced by themselves. They had thus the full benefit of the missing document, and cannot, as I conceive, with any show of reason, aver they suffered detriment from the non-production of the original. The case, in this particular, comes, therefore, within the established rule of the court, not to reverse for an error which has inflicted no substantial injury upon the complaining party.

What has been said, disposes of all the bills of exception to evidence, save that which relates to the question proposed to be propounded to J. C. Harris, by the defendants. This will be considered and disposed of in connection with the third specification of the second class of errors, which, as the only remaining one of this class of any weight, first presents itself to our notice. It points to those portions of the charge by which the jury was instructed, the plaintiff below was entitled to recover, if, from the evidence, it was believed the defendants had either parted with the Girard Bank stock pledged to them, *or thrown it undistinguished into the general mass of their own stock, or that of other persons in their custody*, so as to be unable to discriminate the identical shares of stock they originally purchased for the plaintiff. This proposition presents the pivot upon which the case appears to turn, and it has, therefore, been maturely considered. It is, in general, true, that where the pledge is distinctive in its character, and therefore capable of being recognised among other things of like nature, or where

a mark is set upon it with a view to its discrimination, the pledgee is bound to redeliver the identical article pledged, and cannot substitute something of like kind, unless so authorized by the contract. But I think there is a manifest difference, *ex necessitate*, where the thing pledged, from its very nature, is incapable, in itself, of identification, if once mingled with other things of the same kind. In such case, it is the duty of the pledgee to put a mark upon it, by which it may be distinguished, for, as is said in Nourse v. Prime et al., 4 Johns. Ch. Rep. 490, if a person will suffer his property to go into a common mass without making some provision for its identification, he has no right to ask more than that the quantity he put in should always be there and ready for him. By a just fiction of law, that *residuum* shall be presumed to be the portion he put in. The good sense of these remarks, made in immediate reference to a pledge of shares of bank stock, recommend them to our adoption. They are repeated by Chancellor Kent, in the S. C. reported in 7 Johns. Ch. Rep. 69, and noticed with approbation by Nelson, C. J., in Allen v. Dykers, 3 Hill, 593. Speaking of Nourse v. Prime, he says, "as it appeared the defendants always had on hand the requisite quantity of shares, the law will presume the shares so on hand, from time to time, were the shares deposited, *because the parties have not reduced the shares to any more certainty.*"(a)

It may be, that even in a pledge of stock, which frequently passes from hand to hand with almost as little ear-mark as money itself, the pledger may identify and stipulate for a return of the very same shares, by handing his certificate to the pledgee with a blank power to transfer, not to be used except on a failure to redeem, or in some other mode devised for the same purpose. But where, as here, the shares pledged never stood in the name of the pledger, but passed at once from the former owner to the pledgee, without any thing done by the former to set them apart from other like shares of the latter, or even a request proferred to this effect, it is not perceived how, with any show of reason, it can be made a subject of complaint, that the pledge, necessarily, was mingled with the other similar stock of the pawnee. The plaintiff, by her agent, dealt throughout with the defendants as stock brokers, engaged in the business of buying and selling stock on their own and others' account, and so, constantly receiving and again transferring shares of stock, either by a blank power or by a simple order of transfer entered upon the books of the corporation. Under such circum-

---

(a) On this point, see Turner v. Crookshanks, stated in Amb. 187, 188.

stances, I repeat, it was incumbent on the plaintiff to impress, in some way upon ᵣer shares, a mark of discrimination if she desired them to be kept separate from the mass of stock in the possession of the defendants. But so far from this being done, or any motion made towards it, it is very clear, to my mind, the parties agreed it should be otherwise. A short review of the facts will show this. Upon the request of the plaintiff's agent, the defendants bought for her fifty shares Girard Bank stock, deliverable on the expiration of sixty days or earlier, at the option of the buyer, after thirty days. On the day of the purchase, notice of it was given to the agent. The plaintiff did not elect to take the stock at the expiration of thirty days, but availing herself of the alternative offered by the contract of sale, she waited until within a few days of the longer time allowed for its execution, when her agent again called on the defendants and negotiated with them a temporary loan to pay for the purchased stock. As security for repayment, in addition to fifty shares of Mechanics' Bank stock held by them, it was stipulated the fifty shares of Girard Bank stock should be transferred. Up to this moment, the last-named stock was not held in the name of the plaintiff, nor was there any thing, of an official character, to show her connection with it. By what mode, then, was it to be transferred to the defendants? In the absence of a contrary suggestion, it cannot be doubted that the mode contemplated and adopted was to procure Harris, the seller, to cause this stock to stand in the name of the defendants who had purchased it from him, and whose money was to pay for it. In this connection, it may be properly remarked, that I have failed to perceive any objection to the overruled question which the defendants proposed to put to Harris. The answer might have been evidence, not for the purpose of establishing a local custom adverse to the general law, but to show, by the practice which obtains in giving certificates of stock, what result was in the contemplation of the contracting parties when stipulating for a transfer of the bank stock as collateral security. The temporary loan being thus effected, the transaction rested until the 26th of April, when the plaintiff's agent addressed a letter to the defendants, requesting them to raise $1700, by way of loan, to be collaterally secured by a transfer of the bank stock, with full power to the defendants to transfer or sell it. "With such a power," continues the letter, "no person need be known in the affair but yourselves." To comprehend the value of the remark, it must be recollected that, at this time, the Girard stock stood in the names of the defendants upon the prior arrange-

ment, and in making the suggestion, the plaintiff's agent was, doubtless, actuated by a wish that neither of their names should appear in connection with a pledge of the stock. Though the proposed extended loan was not, at this moment, settled, I think the letter of the 26th of April must be regarded as containing the basis upon which, with some additions, the defendants finally agreed to advance the required funds. The letters of the 17th and 20th of May speak of third persons, yet it is evident, from all the testimony, the plaintiff or her agent knew the defendants as the lenders of the money. From this summary it is apparent the plaintiff did not desire her pledged stock to be kept apart and separated, but that, on the contrary, it was the actual understanding of the parties it should not be so kept. This brings the case within the doctrine of Nourse *v.* Prime and Allen *v.* Dykers, with which we are entirely satisfied. It results that the court below committed a mistake in this particular. As already intimated, under the circumstances of this case, nothing further was incumbent on the defendants than to have at all times under their control the requisite number of shares, ready to be transferred to the plaintiff when legally demanded, unless, indeed, it was the agreement and understanding of the parties that the defendants might, until the money borrowed was repaid, deal with the pledged stock as if it was their own. In such case, it would be within the power of the pledgees to sell or otherwise dispose of it pending the loan, and we concur with the court below, that such an agreement may be established, by showing that the defendants communicated to Dr. Howell, that they were dealing with the fifty shares as their own property, and that having full knowledge of the facts, he made, without objection, the several arrangements for the repayment of the sum borrowed, given in evidence. If it be found that this was the understanding of the parties, then no more can be required at the hand of the defendants, than a readiness to re-deliver the requisite number of shares of the same stock, when the loan was repaid.

In either view, we do not deem a distinct demand by the plaintiff of the stock pledged, before suit brought, essentially necessary. It might have been resorted to as a convenient mode of proof; but the plaintiff may make out her case without it.

We find no error in the other portions of the charge embraced by the remaining exceptions. These were but faintly urged on the argument; and we dismiss them with the single remark, that the reasoning of the judge who tried the cause below sufficiently shows the correctness of his conclusions in these particulars.

Judgment reversed, and a *venire de novo* awarded.