LONDON GUARANTEE & ACCIDENT CO., Limited, v. DOYLE & DOAK.

(Circuit Court, E. D. Pennsylvania. January 3, 1905.)

No. 37.

1. CONTEMPT—EXPLANATION—BURDEN OF PROOF.

Where defendants were ordered to produce books and papers for inspection at a certain time, and failed to properly comply with the order, the burden was on them to show facts excusing their default, in order to relieve them from punishment for contempt.

2. SAME—DEFENSES.

Where defendants contested an application to compel them to produce books and papers for inspection on the ground that plaintiff was not entitled to such examination, and made no claim that the books and papers desired were not under their control, proof in a subsequent proceeding to punish them for contempt in failing to comply with an order requiring such production that the books and papers had been accidentally or mistakenly lost or destroyed prior to the hearing of the application for production was insufficient to purge their contempt.

Motion to Punish for Contempt.

Thos. Raeburn White, for plaintiff.

John C. Bell and E. Clinton Rhoads, for defendants.

J. B. McPHERSON, District Judge. The plaintiff's cause of action against the defendants sufficiently appears in the following quotation from the court's opinion upon demurrer to a bill in equity between the same parties, reported in 130 Fed., at page 719:

"As set forth in the bill, the plaintiff corporation is engaged in the business of insuring employers of labor against loss on account of liability incurred by them through injuries incurred by their employés, or occasioned to others by their negligence. The defendants, who are contractors and builders, were so insured by the plaintiff during the year 1902–1903; several policies being issued to them on May 28, 1902, covering the various classes of risks. It is obvious that the risk assumed by the insurer is commensurate with the number and character of the employés of the insured. The premiums, therefore, are based upon a percentage of the total amount paid out in wages by the insured during the policy period. As it is impossible to accurately determine in advance what the pay roll during any particular period will be, it is customary for the insured to submit an estimated pay roll at the beginning of the policy term, pay premiums based upon the estimate, and then for an accounting to be taken at the end. At that time, if the pay roll has proved to be less than the estimated amount, the insurer returns a stipulated portion of the premium. On the other hand, if it proves to be greater than the amount estimated, the insured pays an additional premium upon the excess. Such an agreement, with mutual covenants to pay rebates and excess premiums as indicated, was made between the parties in this case. To further protect itself, the plaintiff required covenants, which were duly entered into by the defendants, to render written statements of the amounts of the pay rolls at the end of each year, under oath, if required, and to allow the plaintiff or its agents to inspect their books 'at all reasonable times' to satisfy itself as to the accuracy of the various estimates made.

"The policies issued for the year mentioned were accepted by the defendants, the premiums based upon the estimated pay rolls were duly paid, and the plaintiff indemnified them according to the contract.

"The bill then avers that many of the pay rolls of defendants were much greater than the amount estimated by them at the beginning of the year, and therefore a duty was imposed upon them by the contract to account for the excess, but that they falsely averred that the actual pay rolls were no greater than the estimated amounts, declined to furnish written statements, and refused to allow the plaintiff to examine their books, although, under the contract, it was entitled to do so. It then concludes with a prayer for an accounting, for discovery, and for general relief."

This bill was dismissed because the complainant had an adequate remedy at law, and in obedience to that decision the present action of assumpsit was brought on May 31, 1904. Early in June the plaintiff filed a petition containing the following averments, inter alia:

"At the end of the policy period the plaintiff demanded that the defendants submit written statements of the actual amounts of the pay rolls, but the defendants declined to do so, and orally stated that the amounts of the pay rolls were no greater than the estimated amounts as hereinbefore stated.

"The plaintiff avers that the compensation which the defendants paid their employés during the said period far exceeded the sums so estimated by them at the beginning of the term or reported at the end, and that they actually owe the plaintiff, under the contract upon which suit is brought, large sums for premiums in excess of $2,000, the amount necessary to sustain jurisdiction in this court, but the plaintiff is unable to state the exact amount which the defendants owe, because the records as to the precise amount of wages paid by them to their employés are entirely within their own control. It is necessary that the plaintiff shall be allowed to examine the books of the defendants in order to enable it to state under oath the exact amount of its claim, so as to require the defendants to deny the same under oath, or else to suffer judgment by default for want of an affidavit of defense. The defendants' books show the compensation paid by them to their employés

during the said policy term, and it is only by an examination thereof that the plaintiff can accurately ascertain the amount of such compensation, so as to declare properly as hereinbefore stated. The plaintiff has requested the defendants to allow it to examine their books at some reasonable time, as they have expressly covenanted in their contract to do, but they have refused to allow the plaintiff to make such an examination, notwithstanding their agreement, and still persist in their refusal.

"Said agreement to show the books was a part of the consideration for the insurance of the defendants by the plaintiff during said period, and of which insurance they have had the benefit.

"In view of the fact that the premiums to be paid were based upon the amount of the pay rolls, as recorded in the defendants' books, the said records of the pay rolls in fact constitute a portion of the agreement between the parties; and the plaintiff is advised that, under the decisions in this court, it is entitled to an inspection of the said pay rolls, in order to enable it to file its declaration in this case. The plaintiff prays relief herein asked for, not merely under the Revised Statutes, giving the right to the plaintiff to compel the production of books and papers, but also under the express agreement made by defendants to so show their books, and which they refuse to perform, after having received on their part the entire consideration for the contract. Inasmuch as this agreement calls for the production of the books at any reasonable time upon demand of the plaintiff, the plaintiff conceives that it will be a great hardship for it to be compelled to wait until the case is actually at trial before being allowed to inspect said books.

"The plaintiff further conceives and suggests to the court that it will be impossible to ascertain the amount of money owing by defendants to the plaintiff, except by the aid of an expert accountant, who is employed by the plaintiff for the purpose of examining books of this character, and who will be obliged to make a detailed examination, involving very considerable time, before he can make a report as to the amounts so owing. It is therefore essential to the plaintiff's success in the action that it be allowed to make such inspection before trial; and it is further necessary, as already stated, to make such inspection before a declaration is filed, in order that it may state with accuracy and under oath the actual amount owing to it, so as to demand a direct answer under oath from the defendants.

"Wherefore the plaintiff prays that the defendants may be required to produce in the office of the clerk of the said court, their pay ,sheets, time-books, cashbooks, ledgers and all other books or papers which relate to compensation paid to employés of themselves, or of their subcontractors, during the periods of said contracts, and that the plaintiff may be permitted to examine the same."

The defendants answered, denying the plaintiff's right to such an examination; but, after hearing and argument, the court made the following order:

"And now, June 25th, 1904, the court orders the defendants to produce, within twenty days, in the office of the clerk of said court, their pay sheets, timebooks, cashbooks, and all other books of original entry which contain information as to the amount of compensation paid to employés of themselves, or of their subcontractors, or of any other persons contemplated in the contracts upon which suit is brought in this case, during the period of said contracts as set forth in the petition filed."

On July 15th, the defendants produced certain books and papers in the clerk's office, but only two of the books threw any light upon the dispute, and only one of them—a cashbook from December 1, 1902, to July, 1904—was of any material value. No books or papers, except a petty cash book, which showed small and irregular payments to employés during the period from June 1, 1902, to June 17, 1904, were produced to show the wages paid by the defendants during the first six months covered by the policy, viz., from May 28, 1902, to Decem-

ber 1, 1902. The plaintiff thereupon obtained the rule now under consideration to punish the defendants for contempt in failing to obey the order of June 25th, to which rule the defendants replied, excusing their failure to produce the books and papers by averments, which are now made for the first time, that between December 1, 1902, and the middle of March, 1903, while their office was undergoing alteration, many books and papers were moved to a shop not far away, and that some of these books and papers, including these in controversy, were accidentally or mistakenly lost or destroyed. The defendants also averred that a thorough search had been made for the missing documents, but that they could not be found. Witnesses were afterwards heard in open court, under examination and cross-examination, upon the issues thus raised by the petition and answer; and the question now to be decided is whether the defendants have satisfactorily excused their failure to produce the missing books and papers.

It cannot be doubted, I think, that the burden of proof was upon them. The court's order of June 25th necessarily implied that the books and papers were in existence, and within the defendants' reach. If they knew then that the facts were otherwise, it was their duty so to inform the court at once, and to object to the making of an order with which they must have known that they would not be able to comply. Failure thus to act at the proper time is properly followed by imposing upon them the burden of excusing their apparent disobedience to the order; and the same result follows, even if they were ignorant concerning the existence and whereabouts of the books, but did not take the trouble to ascertain in advance whether or not they could comply with such an order, and contented themselves with resisting the application upon other grounds. When a court requires the production of documents, it is presumed that these can be had; and, while the presumption is not conclusive, it has force enough to compel the party upon whom the order is made to undertake the task of showing to the court's satisfaction why the order cannot be fully complied with. If he leaves the matter in doubt or uncertainty, the presumption is not overcome, and the usual consequences of failure must be borne by the party who has failed to sustain the burden of proof. Authority for these propositions may be found in Fenlon v. Dempsey, 50 Hun (N. Y.) 131, 2 N. Y. Supp. 763, the later case of Holly Mfg. Co. v. Venner, 86 Hun (N. Y.) 42, 33 N. Y. Supp. 287, and in several decisions from Pennsylvania, which, although they are founded upon the Pennsylvania act of 1798, are, I think, in point, because the act requires the party to produce, "or satisfy the said court why the same is not in the party's power so to do," and this alternative is ordinarily implied in any order to produce, although the order may be in form unqualified and absolute. The Pennsylvania decisions referred to are Wright v. Crane, 13 Serg. & R. 447; McNair v. Wilkins, 3 Whart. 551; Tuttle v. Loan Co., 6 Whart. 216; Wills v. Kane, 2 Grant, Cas. 47; and Gilpin v. Howell, 5 Pa. 55, 45 Am. Dec. 720.

In their bearing upon the question now to be decided, I have considered again with care all the papers in the case, and the stenographer's notes of the testimony that was taken before me in open court, and I have come to the conclusion that the defendants have not satis-

factorily accounted for their failure to obey fully the order of June 25, 1904, which required them to produce the papers and books therein described.   Some of the evidence offered by the defendants was plainly evasive, some was contradicted by disinterested testimony, and some was not credible.   There can be no doubt that the ledger of 1902–4, and the pay rolls, or time sheets, from March to May, 1903, were in existence early in March, 1904, for they were audited by a professional accountant at that time; and their subsequent disappearance is rather guessed at than explained.   And there is little more doubt in my mind that the cashbook from May 28 to December 1, 1902, was accessible at the same time.   What has become of these books and papers since March of the present year, is not accounted for, save in a vague and general way, that has failed to convince; and I am forced to the conclusion, therefore, that the defendants have disregarded the order of June 25, 1904, although it was within their power to obey its commands.

It is accordingly adjudged that the two defendants, and each of them, are guilty of contempt in disobeying the order referred to, and the clerk is directed to enter the following decree:

If the defendants produce in the office of the clerk of the circuit court on or before January 15, 1905, the ledger of 1902–4, the pay rolls or time sheets from March to May 28, 1903, and the cashbook from May 28 to December 1, 1902, or if they produce the cashbook alone, they are ordered to pay no more than the costs accruing upon this motion, including the stenographer's charges, on or before January 20, or, in default of such payment, to suffer imprisonment in the jail of this county for the period of 60 days.   If the foregoing books and papers are not produced on or before January 15, the defendants are ordered to pay a fine of $250, and also the costs accruing upon this motion, including the stenographer's charges, on or before January 20, or, in default of such payment, to suffer imprisonment in the jail of this county for the period of 60 days.