## N. E. Henderson & Son, Inc., v. The F. H. Smith Company.

*Ralph S. Croskey*, for plaintiff; *J. Gowen Roper*, for defendant.

BROWN, JR., J., March 19, 1931.—This action was against the defendant as an undisclosed principal for the sum of $4850, with interest from December 31, 1927, alleged to be due upon a contract between plaintiff and one Joseph Rabinowitz for the installing of lighting fixtures in an apartment house.

On December 2, 1929, a rule was made absolute upon defendant to produce at the trial certain books, records, contracts, papers and canceled checks, covering the erection and construction of the apartment house, in the possession of defendant or in its control.

During the trial on January 13, 1931, judgment by default was entered against the defendant under the provisions of the Act of February 27, 1798, 3 Sm. Laws, 303, providing as follows: "the Supreme Court and several Courts of Common Pleas in this state, shall have power, in any action depending before them, on motion, and upon good and sufficient cause shewn, by affidavit or affirmation, and due notice thereof being given, to require the parties, or either of them, to produce books or writings in their possession or power, which contain evidence pertinent to the issue; and if either party shall fail to comply with such order, and to produce such books or writings, or to satisfy said courts why the same is not in the party's power so to do, it shall be lawful for the said courts, if the party so refusing shall be a plaintiff, to give judgment for the defendant as in cases of non-suit, and if a defendant, to give judgment against him or her by default, as far as relates to such parts of the plaintiff or plaintiffs demand, or the defendant or defendants defence, to which the books or papers of the party is alleged to apply."

"The defendants then, according to the act of assembly, when such a rule is made, must either produce the writings named in it, or satisfy the judge why it is not in his power to produce them. These are the only answers he can make at the trial; and as the defendant in the present case, withheld several of the papers ordered to be produced, the only question is, whether the evidence he gave to account for the non-production of them, was satis-

factory:" Tuttle *v.* The Mechanics and Tradesman's Loan Co., 6 Wharton, 216, 219.

Defendant's assistant secretary testified that the papers covered by the rule were not in its possession or control, but in the possession of the Department of Justice in Washington by virtue of subpœnas issued under the direction of the Supreme Court of the District of Columbia. He did not present the subpœnas for the examination of the trial judge. If the defendant had said that the papers were lost or that it had none, its inability to produce might have been adequate: Gilpin *v.* Howell, 5 Pa. 41, 55; Cottrell *v.* Warren, 18 Pa. 487. It did neither, but relied upon subpœnas issued by another court. Thus, an explanation was attempted, but, as it was incumbent upon defendant to "satisfy" the trial judge "why" it was not within its power to produce, he should have been afforded the opportunity to read the subpœnas to ascertain whether or not defendant was justified in failing to comply with the rule. The affirmation that the defendant did not have in its possession or custody the papers called for by the rule, and it was not in its power to produce same, is not sufficient: Wright *v.* Crane, 13 S. & R. 447. As Chief Justice Tilghman pointed out in that case (page 451), "the party is required, not barely to say that the production of the papers is not in his power, *but why it is not.* It may be that it is not in his power, because he has put it out of his power, by his own act. He may have delivered them to another person, for the purpose of putting them out of his power. Now, the court has a right to be satisfied on this point, for so says the act of assembly."

The dissatisfaction of the trial judge with the explanation made by the defendant was not unreasonable. Examination of the subpœnas might have revealed that they did not cover the papers called for by the rule. Surely the trial judge was entitled to see them. The assistant secretary testified that the subpœnas were in the possession of a vice-president of the defendant who was not in court. This would have justified the trial judge in believing that the defendant was deliberately evading the court's order.

Defendant appeals to the discretion of the court to grant its motion for new trial by attaching to its paper book a copy of a subpœna issued by the Supreme Court of the District of Columbia and a copy of receipt dated October 8, 1930, signed by a special assistant to the Attorney General, for the papers listed in the subpœna. This is not the proper way to bring these documents before us. They are not after-discovered evidence. No request for continuance or for additional time to locate them was made, and we do not feel justified in helping a defendant which, so far as the record discloses, did not help itself. However, we have examined the subpœna and note that the defendant was commanded to attend the Supreme Court of the District of Columbia to testify, and to produce certain papers therein enumerated, on October 8, 1930. That was all that was required. The subpœna did not give that court nor the Attorney General possession of the papers. It does not appear that they were impounded. Nothing has been disclosed to us that would have prevented their production at the trial here. Defendant has not shown that it could not have re-possessed itself of them so as to have complied with the order of this court. Apparently it has permitted the papers to remain with the Attorney General, an act of grace which left them entirely within defendant's control. "If the defendant has been injured, it is his own fault, as it is manifest, there has been a want of candor and fair dealing on his part. The act imposes no hardships:" Cowles *v.* Cowles, 2 P. & W. 139, 143.

Defendant argues in support of its motion for new trial that the lack of recent decisions under the Act of 1798 is "strongly persuasive of the belief that the act, penal in its character, has not been invoked nor a judgment given under it for so long a time as to make it to all intents and purposes obsolete." Defendant overlooks the possibility that there may have been decisions which have not been reported. As to similar argument made in Wright v. Crane, *supra*, as to the Act of May 22, 1722, 1 Sm. Laws, 131, 144, Chief Justice Tilghman said "it must be a very strong case, to justify the court in deciding, that an act standing on the statute book, unrepealed, is obsolete and invalid. I will not say, that such a case may not exist—where there has been a non user for a great number of years—where, from a change of times, and manners, an ancient sleeping statute would do great mischief, if suddenly brought into action—where a long practice, inconsistent with it, has prevailed, and especially, where, from other and later statutes, it might fairly be inferred that, in the apprehension of the legislature, the old one was not in force. But this is not the case with the act of the year 1722. Its provisions are not unsuited to modern times. It imposes no hardships on the defendant, who is secured in a fair trial. And, indeed, it has this advantage, that the proceedings are conducted under the eye of the court. There is no pretence, therefore, for saying that it is obsolete."

A new trial is, therefore, refused.